ELLEN F. ROSENBLUM
Attorney General
BRIAN A. DE HAAN  #155251
IAN VAN LOH  #225163
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  ian.vanloh@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WHEELS FINANCIAL GROUP, LLC, d/b/a
LoanMart and WFG PURCHASER, LLC,

               Plaintiffs,

     v.

 ANDREW R. STOLFI, in his official capacity
as Director of the Oregon Department of
Consumer and Business Services, TK KEEN,
in his official capacity as Administrator of the
Oregon Department of Consumer and
Business Services, Division of Financial
Regulation, and DOROTHY BEAN, in her
official capacity as Chief of Enforcement of
the Oregon Department of Consumer and
Business Services, Division of Financial
Regulation,

               Defendants.

Case No.  3:24-cv-01543-IM

DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

LR 7-1(A) CERTIFICATION ................................................................................. 1

MOTION TO DISMISS ......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

    INTRODUCTION .............................................................................................. 1

    STATEMENT OF RELEVANT FACTS ........................................................... 3

        I.      OREGON'S CONSUMER FINANCE LAW. ....................................... 3

        II.     PLAINTIFFS' LENDING ACTIVITIES IN OREGON. ......................... 5

        DFR'S INVESTIGATION AND ENFORCEMENT PROCEEDING
        AGAINST PLAINTIFFS ......................................................................... 6

    ARGUMENT ..................................................................................................... 9

        I.      LEGAL STANDARD APPLICABLE TO 12(b)(1) MOTIONS TO DISMISS ............. 9

        II.     PLAINTIFFS' PREEMPTION DEFENSE DOES NOT GIVE RISE TO
              SUBJECT-MATTER JURISDICTION. .................................................. 9

             A.      Section 27 Does Not Preempt State Rent-a-Bank Claims
                  Against Non-Banks. ...................................................................... 10

             B.      The "Valid-When-Made" Doctrine does not Extend
                  Preemption to True  Lender Claims. ............................................. 11

             C.      DFR Adequately Alleges True Lender Claims Against
                  Plaintiffs. ...................................................................................... 13

        III.    DISMISSAL UNDER *YOUNGER* ABSTENTION IS PROPER IN THIS CASE. ......... 17

             A.      State Enforcement Proceedings Against Plaintiffs are
                  Ongoing. ........................................................................................ 18

             B.      DFR's Enforcement Proceeding Implicates Important State
                  Interests. ........................................................................................ 19

             C.      Plaintiff's Preemption Defense Can be Heard in the State
                  Proceeding. ................................................................................... 21

             D.      Plaintiffs Seek to Enjoin the DFR Proceeding. ........................... 23

    CONCLUSION ................................................................................................. 23

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*Cantero v. Bank of America, N.A.,* 602 U.S. 205 (2024) ............................................................... 13

*CashCall, Inc. v. Morrisey*, No. 12-1274 2014 WL 2404300 (W. Va. May 30, 2014) ............... 14

*Communications TeleSystems Int'l v. California Pub. Utils. Comm'n*, 14 F. Supp. 2d 1165 (N.D. Cal. 1998) ....................................................................................................... 19

*Cross River Bank v. Meade*, No. 17-cv-00832-PAB-KMT, 2018 WL 1427204 (D. Col. Mar. 22, 2018). ................................................................................................................ 20, 22

*District of Columbia v. Elevate Credit, Inc.,* 554 F. Supp. 3d 125 (2021) ........... 10, 11, 14, 15, 17

*Epes v. Green Tree Servicing, LLC*, No. 3:04-cv-455, 2004 WL 5571941 (E.D. Va. Dec. 14, 2004) ........................................................................................................................ 19

*Fidelity Security Corp. v. Brugman*, 137 Or. 38 (1931) .............................................................. 14

*Gaither v. Farmers & Mechanics' Bank of Georgetown*, 26 U.S. 37 (1828) .............................. 12

*Gibson v. Schmidt*, 522 F. Supp. 3d 804 (D. Or. 2021) ............................................................... 18

*Goleta National Bank*, 211 F. Supp. 2d 711 (E.D. N.C. 2002) .............................................. 20, 21

*Keneally v. Lungren*, 967 F.2d 329 (9th Cir. 1992). .................................................................... 22

*Krispin v. May Dep't Stores Co.*, 218 F.3d 919 (8th Cir. 2000) .................................................. 12

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ........................................................................ 9

Likewise, in *Meade v. Marlette Funding, LLC, 2018 WL 1417706 (D. Col. 2018)* ......... 10, 11, 15

*Meade v. Avant of Colorado, LLC, 307 F. Supp. 3d 1134 (D. Col. 2018)* ........... 11, 13, 14, 15, 17

*Nevada Entertainment Indus. v. City of Henderson*, 8 F.3d 1348 (9th Cir. 1993) ...................... 18

*Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. at 652 (1986) ...................... 22

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 447 U.S. 619 (1986) .................. 18

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004). ................................................... 9

*San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087 (9th Cir. 2008) ...................................................................................................... 18

*State Farm Mut. Auto. Ins. Co. v. Metcalf,* 902 F. Supp. 1216 (D. Haw. 1995)............... 18, 19, 22

*Terry Trading Corporation v. Barsky*, 210 Cal. 428 (1930)....................................................... 14

*WebBank v. Meade, 2018 WL 1399914* ...................................................................................... 20

Page ii

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*WebBank v. Meade*, No. 17-cv-00786-PAB-MLC, 2018 WL 1399914 (D. Col. Mar. 19, 2018) .................................................................................................................. 20, 21, 22

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................... 9

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................. 3, 17

**Statutes**

ORS 183.310 ........................................................................................................... 4, 5

ORS 183.413 ............................................................................................................... 5

ORS 183.460 ............................................................................................................... 5

ORS 183.464(1) .......................................................................................................... 5

ORS 183.482 ......................................................................................................... 5, 22

ORS 184.470 ............................................................................................................. 22

ORS 725.010 ............................................................................................................... 3

ORS 725.045(1)(a) ..................................................................................................... 3

ORS 725.045(1)(b) ..................................................................................................... 2

ORS 725.050(1) ...................................................................................................... 2, 4

ORS 725.060 ............................................................................................................... 4

ORS 725.120 ............................................................................................................... 3

ORS 725.140(1) ...................................................................................................... 3, 8

ORS 725.140(1)(a)-(c) ............................................................................................... 4

ORS 725.145 ............................................................................................................... 4

ORS 725.235 ............................................................................................................... 5

ORS 725.310(1) .......................................................................................................... 4

ORS 725.310(2)(a) ..................................................................................................... 4

ORS 725.310(2)(b)(C) ................................................................................................ 4

ORS 725.312(1) .......................................................................................................... 4

ORS 725.340(1) .......................................................................................................... 4

ORS 725.340(1)(a) .................................................................................................. 1, 8

ORS 725.340(1)(a), ..................................................................................................... 2

Page iii

ORS 725.340(4) ................................................................................................................ 2, 8

ORS 725.360 ..................................................................................................................... 4

ORS 725.400(1) ............................................................................................................ 5, 18

ORS 725.400(2),(3) ............................................................................................................ 5

ORS 725.410 ..................................................................................................................... 5

**Rules**

12 C.F.R. § 331 .................................................................................................................. 9

OAR 441-730-0000 ........................................................................................................... 4

OAR 441-730-0280 ........................................................................................................... 2

OAR 441-730-0280(1) ...................................................................................................... 8

**8**

12 U.S.C. § 1831d ......................................................................................................... 2, 9

12 U.S.C. § 25b(b) ........................................................................................................... 13

12 U.S.C. 25b(b)(1) .......................................................................................................... 13

28 U.S.C. § 1331 ................................................................................................................ 9

U.S.C. § 1337 ..................................................................................................................... 9

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1(a) CERTIFICATION

The parties have met and conferred in good faith regarding the issues raised in this motion to dismiss but failed to resolve their dispute. Defendants seek judicial resolution of the issued raised by this motion.

## MOTION TO DISMISS

To Plaintiffs Wheels Financial Group, LLC, and WFG Purchaser, LLC:

Please take notice that at a time and location of the Court's choosing, before the Honorable Karin J. Immergut, District Judge, Defendants Andrew Stolfi, TK Keen, and Dorothy Bean, each named exclusively in their official capacity with the Oregon Department of Consumer and Business Services,[1] will and do move under Federal Rule of Civil Procedure 12(b)(1) to dismiss with prejudice Plaintiffs' federal claims as appropriate for abstention.

Defendants' motion is based on the instant notice, the supporting memorandum of points and authorities, the pleadings, and the records of this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The two Plaintiffs—an Oregon consumer finance licensee (Wheels Financial Group, LLC, d/b/a LoanMart) and its unlicensed, loan-buying subsidiary (WFG Purchaser, LLC)—are respondents in an ongoing administrative enforcement proceeding brought against them by the Oregon Department of Consumer and Business Services (DCBS), by and through the Division of Financial Regulation (DFR). In that proceeding, DFR charges that Plaintiffs perpetrated an unlawful lending scheme in violation of Oregon Revised Statues section 725.340(1)(a) by originating and issuing to Oregon borrowers 659 vehicle loans that charged usurious annual interest rates ranging from 58 to 202 percent—well in excess of Oregon's applicable statutory

---

[1] Mr. Stolfi is Director of the Oregon Department of Consumer and Business Services (DCBS). Mr. Keen is Administrator of the DCBS Division of Financial Regulation (DFR). Ms. Bean is DFR's Chief of Enforcement.

Page 1 -    DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

cap of thirty-six percent.[2]  On a total loan principal amount of just $2.3 million, DFR alleges that Plaintiffs charged interest to Oregon borrowers over $4.6 million in excess of the statutory cap. DFR has additionally alleged that Plaintiffs committed a host of other, related licensing and abusive practice violations under Oregon Revised Statues 725.045(1)(b), .050(1), .340(1)(a), .340(4), and Oregon Administrative Rule ("OAR") 441-730-0280.

　　　Plaintiffs now ask this Court to halt DFR's enforcement proceeding and declare that the state allegations against them are federally preempted and may not be heard.  Plaintiffs attempt to justify this request by pointing to the alleged involvement of a Utah state-chartered bank, Capital Community Bank (the "Bank"), in the lending process.  The Bank's presence, Plaintiffs argue, implicates Section 27 of the Federal Deposit Insurance Act, 12 U.S.C. § 1831d, which preempts DFR's enforcement action and thereby shields Plaintiffs and the 659 Oregon loans from state administrative scrutiny.  But Section 27 preemption only applies to loans and activities in which state banks are determined to be the true lender.  And as DFR alleges in its state enforcement action, Plaintiffs only pretextually involved the Bank in their lending process so they could invoke preemption and evade Oregon's usury restrictions—a classic "rent-a-bank" scheme.  In short, it is Plaintiffs, and not the Bank, who are the true lenders of the usurious Oregon loans.

　　　Rent-a-bank schemes are not new.  As numerous other courts addressing this precise issue have held, federal banking preemption generally and FDIA Section 27 specifically do not preempt state true-lender claims against non-banks such as Plaintiffs.  Courts have consistently applied this principle irrespective of whether the non-banks associate with a bank in their lending process or are purchasers or assignees of loans originated by a bank.  The case law is clear: Section 27 preemption applies only to state enforcement claims against banks.  And Plaintiffs are not banks.

---

[2] By its very terms, section 725.340(1)(a) caps the interest that non-bank consumer-finance entities, like Plaintiffs, may charge on consumer finance loans.  The statutory cap is 36 percent.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Because Plaintiffs have alleged no other basis for federal subject-matter jurisdiction over this case, their Complaint should be dismissed on the ground that DFR's enforcement claims against Plaintiffs are not preempted.

Alternatively, even if the Court were to agree with Plaintiffs that a plausible argument for federal preemption exists here, the Court should defer the preemption question to the state action and abstain from jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971). DFR's enforcement proceedings against Plaintiffs predate this lawsuit, remain ongoing, and concern state usury law enforcement, which is widely recognized to involve vital state interests. This Court's abstention will not preclude Plaintiff from fully arguing preemption in the state's administrative proceedings. Under *Younger*, accordingly, the Court may and should abstain from hearing Plaintiffs' request to enjoin DFR's enforcement process, and instead, dismiss this action with prejudice.

## STATEMENT OF RELEVANT FACTS[3]

### I.    OREGON'S CONSUMER FINANCE LAW.

Oregon's Consumer Finance Act ("CFA"), Or. Rev. Stat. § 725.010, *et seq.*, establishes a consumer finance loan regime. Under this regime, a person or business may not make a consumer finance loan of $50,000 or less or act "as an agent, broker or facilitator for a person that makes a consumer finance loan of $50,000 or less without first obtaining a license" from the Department of Consumer and Business Services. Or. Rev. Stat. § 725.045(1)(a); see also Or. Rev. Stat. § 725.120 (discussing availability of a license application and associated fee). Issuance of a license is expressly conditioned on compliance with the laws of the Oregon market. See Or. Rev. Stat. § 725.140(1).

DCBS may only issue a license upon the Director concluding that the "financial responsibility, experience, character and general fitness of the applicant . . . warrant the belief

---

[3] For the purposes of this motion only, which is brought under Federal Rule of Civil Procedure 12(b)(1), all well-pleaded factual allegations are treated as true, even though they may be contested, and unless they are contradicted by judicially noticeable facts.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

that the business will be operated honestly, fairly and efficiently within the purposes of this chapter," that none of the grounds requiring disapproval are present, and upon affirming that the applicant obtained the necessary surety bond. Or. Rev. Stat. § 725.140(1)(a)-(c); see also Or. Rev. Stat. § 725.145 (specifying the grounds on which DCBS may disapprove a license application). Once issued, the license continues in full force until surrendered, revoked, or suspended. *Id*. § 725.140(2).

Licensees, and the loans they market, originate, service, or otherwise facilitate, are subject to a comprehensive set of license conditions and limitations. For example, no licensee may take power of attorney from a borrower except in the narrow circumstance of transferring ownership in a motor vehicle subject to a motor-vehicle loan. Or. Rev. State § 725.050(1). Licensees are also forbidden, *inter alia*, from engaging in deceptive or misleading advertising (*id*. § 725.060), transacting business within the ambit of the CFA under a name different than it appears on their license (*id*. § 725.210), withholding certain information from borrowers (*id*. § 725.360), or charging/benefiting from a consumer-finance loan with an interest rate exceeding thirty-six percent (*id*. § 725.340(1)). Licensees must also comply with DCBS administrative rules promulgated under the CFA and in accordance with the Oregon Administrative Procedures Act, Or. Rev. Stat. § 183.310, *et. seq*. Or. Rev. Stat. § 725.505.

To ensure licensee compliance with state consumer-finance laws and regulations, DCBS (acting through DFR) regularly examines and investigates the loans and business operations of its licensees. Or. Rev. Stat. § 725.310(1); *id*. § 725.312(1) (examinations "shall be conducted not more than 24 months apart"). In furtherance of DFR's investigatory power, every licensee must furnish DFR with access to their place of business, books, accounts, safes and vaults upon the agency's request. *Id*. § 725.310(2)(a). Licensees must also produce records requested by DFR. *Id*. § 725.310(2)(b)(C); see also OAR 441-730-0000, *et. seq*. (consumer-finance regulations).

Page 4 -    DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

If DFR finds reasonable cause to believe that a licensee has committed one or more violations of the CFA, regulations promulgated in furtherance of the CFA, or otherwise defied a lawful order of DFR, the agency may issue and serve a cease-and-desist order to the licensee, or someone acting as a lender without a license. Or. Rev. Stat. § 725.400(1); see also *id*. § 725.410 (codifying DFR power to institute enforcement actions). The order takes effect thirty (30) days after issuance unless the party named in the order requests a contested-case hearing under Oregon Revised Statutes, Title 18, Chapter 183. Or. Rev. Stat. § 725.400(2),(3); see also Or. Rev. Stat. § 183.310, *et. seq*. Noncompliance with a cease-and-desist order exposes the licensee to suspension or revocation, as well as civil penalties. Or. Rev. Stat. § 725.235; *id*. § 725.400(5); *id*. § 725.910.

Contested-case hearings are adversarial, evidentiary proceedings conducted before a state hearing officer (an administrative law judge). See Or. Rev. Stat. § 183.413, *et. seq*. After the presentation of evidence and argument, the presiding hearing officer will "prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law." *Id*. § 183.464(1). If the proposed order is adverse to a party, then the party has the right to file with DFR written exceptions to the order and present written argument concerning those exceptions. *Id*. § 183.460. DFR considers the exceptions and addresses them in any final order it issues. The proposed order becomes final after 30 days or longer as fixed by agency rule or on the agency's determination that it needs additional time to adequately review the proposed order. Once the proposed order becomes final, any party aggrieved by that order may timely appeal it as well as its findings of fact and conclusions of law pursuant to section 183.482. See *id*. § 183.470. Review of the final order is performed by the Oregon Court of Appeals. *Id*. § 183.482.

## II.    PLAINTIFFS' LENDING ACTIVITIES IN OREGON.

Plaintiff LoanMart is an Oregon state consumer finance licensee, and WFG is LoanMart's loan-buying subsidiary. (ECF No. 1 at 6.) DFR's investigation of Plaintiffs'

Page 5 -   DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Oregon lending program found that LoanMart issued 659 vehicle loans to Oregon borrowers with a total principal value of approximately $2.3 million. (ECF No. 6-1 at 6.) Plaintiffs charged annual interest rates on those loans ranging from 58 to 202 percent. (ECF No. 6-1 at 6.)

LoanMart styles itself as a "third-party service provider" that assists the "Bank" in making high-interest vehicle loans available to Oregon borrowers. Plaintiffs' lending program is governed by a Marketing and Program Management Agreement between LoanMart and the Bank, and a Loan Participation Agreement between WFG and the Bank. (ECF No. 1 at 14-15.)

Under the Marketing and Program Management Agreement, the parties agreed that LoanMart was responsible for funding the loans on the Bank's behalf from a designated account in the Bank's name, and that LoanMart was otherwise responsible for promoting, marketing and soliciting the loans, receiving and accepting consumer applications for the loans, processing the applications and establishing borrower credit criteria, handling all borrower communications, receiving and processing loan payments, and conducting collection activities. (ECF. No. 6-1 at 5; ECF No. 5-1 at 4-17.)

Under the Participation Agreement, WFG agreed to purchase participation interests in Oregon vehicle loans offered to it by the Bank. The participations WFG purchases convey ninety-five (95) percent beneficial ownership of the loans and their proceeds from the Bank to WFG. When non-performing loans are "charged off," WFG's ownership percentage of the loans increases to 100 percent.

**III.    DFR'S INVESTIGATION AND ENFORCEMENT PROCEEDING AGAINST PLAINTIFFS.**

LoanMart obtained its Oregon consumer finance license in August 2019. (ECF No. 1 at 17.) LoanMart was examined by DFR in 2020 and received a Report of Examination (ROE) in August 2020, stating that LoanMart was violating the CFA's usury provisions by brokering loans to Oregon borrowers charging annual interest in excess of 36 percent. (ECF No. 1 at 17.) DFR and LoanMart exchanged communications concerning the applicability of Oregon's usury

Page 6 -    DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

statutes to LoanMart's lending throughout the remainder of 2020 and 2021.  (ECF No. 1 at 17-19.)

DFR examined LoanMart again in early 2022 and issued another ROE that August, stating that LoanMart was violating the CFA's usury provisions by brokering loans to Oregon borrowers charging annual interest in excess of 36 percent.  (ECF No. 1 at 19.)  The August 2022 ROE informed LoanMart that the described "violations may be reviewed by the Oregon Department of Consumer and Business Services' Division of Financial Regulation for possible enforcement action."  (ECF No. 1 at 19.)

Following the August 2022 ROE, LoanMart and DFR again exchanged positions on the alleged violations by letter and email.  (ECF No. 1 at 19.)

On July 25, 2023, DFR sent LoanMart and WFG an Order To Cease And Desist, Proposed Order To Assess Civil Penalties, Proposed Order To Revoke License, And Notice Of Right To Administrative Hearing, dated July 25, 2023 (the "Cease & Desist Order").  (ECF No. 1 at 19.)  The Cease & Desist Order noted that in LoanMart's lending arrangement with the Bank, LoanMart agreed to, among other things, "promote, market, and solicit" the Oregon Loans, "receive and accept consumer applications for such loans," and "originate and service" the loans by processing loan applications, evaluating borrower credit criteria, disbursing loan funds, handling all borrower communications, receiving and processing loan payments, and conducting collections activities.  (ECF No. 6-1 at 5-6.)  The Cease & Desist Order additionally found that under the Participation Agreement WFG "agreed to, and did, purchase a 95-100% interest in all loans originated and funded under the program established pursuant to the Marketing and Program Management Agreement."[4]  (ECF No. 6-1 at 5.)

---

[4]     Plaintiffs complain throughout their filings that DFR initially indicated that the State of Oregon had opted out of Section 27 of the Federal Deposit Insurance Act, 12 U.S.C. § 1831d, but then did not continue to maintain that position in its enforcement proceeding, and also that the Cease & Desist Order articulated a legal theory—"true lender"—that DFR had not previously disclosed to Plaintiffs.

Page 7 -    DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

The Cease & Desist Order proceeded to conclude that LoanMart had violated Oregon Revised Statute section 725.050(1), which prohibits taking overly broad powers of attorneys from Oregon borrowers in connection with consumer finance loans, section 725.340(4), which prohibits conditioning loans on abusive attorney fee provisions, and OAR 441-730-0280(1), which prohibits including hold harmless clauses for lenders in Oregon consumer finance loans. Additionally, DFR found that, under their arrangement with the Bank, Plaintiffs "bore all or substantially all of the economic risks associated with each of the Oregon Loans and received all or substantially all of the economic benefits associated with each of the Oregon Loans." Based on this, the Cease & Desist Order concludes that Plaintiffs were the "true lenders" of the Oregon Loans and that Plaintiffs had therefore violated Oregon's usury limitations under Oregon Revised Statutes section 725.340(1)(a).

---

But in an examination and investigation properly conducted by unbiased civil servants the legal theory of the case can, and sometimes must, change as examiners and investigators learn new facts. This is particularly so when the examination and investigation staff have entertained merits exchanges with their licensees, as DFR did here, and thus have opportunity to assess and consider defense arguments before taking formal action. The fact that DFR declined in advance to disclose their legal theory until all the facts and evidence had been gathered, and that DFR ultimately abandoned another theory after full consideration of the Plaintiffs' legal objections, is hardly an indication of bias or bad faith. It is proof, rather, that the examination and investigation were fairly and appropriately conducted, and founded upon evidence and well-considered theories.

Plaintiffs make much, additionally, of the fact that DFR continued to renew LoanMart's consumer finance license throughout the pendency of its investigation. But licenses are continuing in nature absent administrative action that itself would require notice and hearing to resolve. Or. Rev. Stat. § 725.140(1). In other words, in order to refuse to renew or revoke LoanMart's license, DFR would have had to issue an administrative order similar in nature to the one that is at issue in this proceeding, except that such revocation would have been based on an incomplete investigation. DFR fairly and appropriately completed its investigation before taking action against one of its licensees. In pointing out Plaintiffs' pro forma license renewal as somehow undercutting the merit of DFR's action, Plaintiffs instead highlight the propriety of DFR's examination and investigatory process.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiffs requested an administrative hearing on DFR's Cease & Desist Order on August 11, 2023, and DFR referred the matter to a hearing officer on September 24, 2024.

## ARGUMENT

### I.    LEGAL STANDARD APPLICABLE TO 12(b)(1) MOTIONS TO DISMISS.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual.  See *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the allegations in the complaint are challenged as insufficient on their face, and the Court must assume that the factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor.  See *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, in a factual attack, such as claims and issue preclusion, the court may look beyond the complaint to matters of public record or extrinsic evidence without having to convert the motion into one for summary judgment, and it need not presume the truthfulness of a plaintiff's allegations.  *Safe Air for Everyone*, 373 F.3d at 1039; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Under this circumstance, the district court may resolve factual disputes itself.  *Leite*, 749 F.3d at 1121-22.

### II.    PLAINTIFFS' PREEMPTION DEFENSE DOES NOT GIVE RISE TO SUBJECT-MATTER JURISDICTION.

Plaintiffs allege that federal subject-matter jurisdiction over this action exists under 28 U.S.C. §§ 1331 and 1337 because the DFR enforcement action that Plaintiffs ask this Court to halt asserts claims that they characterize as completely preempted by Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, and its implementing regulation, 12 C.F.R. § 331.  (ECF No. 1 at 4, 6.)  But Plaintiffs themselves are not banks and neither Section 27 nor its implementing regulation affords preemption to usury claims against non-bank affiliates like Plaintiffs.  Plaintiffs' case should accordingly be dismissed for lack of subject matter jurisdiction.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**A.      Section 27 Does Not Preempt State Rent-a-Bank Claims Against Non-Banks.**

Several courts have addressed this same issue in prior cases involving state enforcement claims against non-bank participants in "rent-a-bank" usury schemes, each concluding that federal subject matter jurisdiction could not be founded upon the non-bank affiliates' claims of Section 27 preemption.

A case with facts close to this one, *District of Columbia v. Elevate Credit, Inc.,* 554 F. Supp. 3d 125 (2021) ("*Elevate Credit*"), involved a usury-enforcement action by the District of Columbia against a non-bank lender that had associated with Utah and Kentucky state banks to make loans within the District. Like Plaintiffs do here, the non-bank defendant in *Elevate Credit* argued that the loans had really been made by the out-of-state banks, and that its "role [wa]s only as a service provider." *Id*. at 132. On this basis the defendant removed the case to federal court, arguing that Section 27 preemption gave rise to subject matter jurisdiction.

The *Elevate Credit* court remanded for lack of subject-matter jurisdiction, holding that Section 27 does not completely preempt state enforcement claims against non-bank lending affiliates. *Id.* at 136 ("the Court concludes that even if Section 27 of the FDIA completely preempts state law usury claims against state-chartered banks, it does not completely preempt the District's claims against Elevate, a non-bank entity.") Observing that "the District is not the first plaintiff to bring a state law consumer protection enforcement action against a non-bank entity that allegedly 'rents' a bank to provide predatory, high interest loans to consumers," the court added that "[t]he vast majority of courts that have been confronted with the issue have concluded that the [National Bank Act] and FDIA do not completely preempt state usury claims against a non-bank." *Id.* at 136, n.3. Following the majority rule, the court held that "because the only usury claims in this case are against a non-bank entity, Section 27 is not implicated and cannot provide a basis for removal jurisdiction."

Likewise, in *Meade v. Marlette Funding, LLC*, the district court remanded to state court the Colorado State enforcement action, which the  non-bank defendant attempted to remove to federal court on the theory that it was protected by Section 27 preemption. *Id*., No. 17-cv-00575-

Page 10 -  DEFENDANTS' MOTION TO DISMISS

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

PAB-MJW, 2018 WL 1417706, *1-*2 (D. Col. Mar. 21 2018) ("*Marlette*").  The defendant argued that the usurious loans it had marketed in Colorado were really made by an out-of-state bank.  *Id.*  The court rejected the defendant's preemption claim, stating "defendant is not a bank," and further that "[c]ourts in this circuit and others have repeatedly held that when claims are asserted against a non-bank entity, complete preemption does not apply and remand to state court is warranted, even if the non-bank defendant has a close relationship with a state or national bank."  *Id.* at *2 (collecting cases).

In yet another case involving a state enforcement action against usurious lenders, *Meade v. Avant of Colorado, LLC*, a non-bank defendant removed to federal court on the theory that Section 27 preemption barred the state-claims against it because the defendant had purchased the loans from a state-chartered bank.  *Id.*, 307 F. Supp. 3d 1134, 1137-39 (D. Col. 2018) ("*Avant*").  After performing a close examination of Section 27's text, the court reasoned that the statute "governs what charges a 'State bank' may impose, but again, does not on its face regulate interest or charges that may be imposed by a non-bank."  *Id.* at 1144-45.  Noting that the defendant was the "true lender," the court then remanded the case citing a lack of subject-matter jurisdiction.  *Id.* at 1151-53.

The *Avant*, *Elevate Credit*, and *Marlette* decisions are dispositive of the jurisdictional issue in this case.  Neither Plaintiff is a state-chartered bank and the DFR proceeding brings no claims against the Bank, Plaintiffs' transaction affiliate.  (See ECF No. 1 at 6-7; ECF No. 6-1 at 4-13.)  No matter that Plaintiffs claim to have worked "in a close relationship with" a state-chartered bank, they may not invoke subject matter jurisdiction on Section 27 preemption grounds.  See *Marlette*, 2018 WL 1417706 at *2.

**B.    The "Valid-When-Made" Doctrine does not Extend Preemption to True Lender Claims.**

Plaintiffs argue that although they are not banks, they should still be shielded by Section 27 preemption because DFR's claims against them involve loans that Plaintiffs purchased from a state-chartered bank.  The so-called "valid-when-made" doctrine, purportedly codified at Section

Page 11 -  DEFENDANTS' MOTION TO DISMISS

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

27, subsection (e), provides that federal preemption travels with the loan.  (ECF No. 4 at 13 ("the valid-when-made doctrine . . . authorizes an assignee to step into the shoes of an assignor and *makes clear that the [National Banking Act] and [Federal Deposit Insurance Act] preempt the application of state usury laws against assignees.*").)

The FDIC rejects Plaintiffs' interpretation of subsection (e) in adoptive guidance to its Section 27 implementing regulation.  That guidance relates that the FDIC received industry comments requesting revision of the proposed implementing regulation to clarify that the regulation was not intended to preempt true lender claims against non-bank loan assignees.  Preamble to the Federal Interest Rate Authority Rule, 85 Fed. Reg. 44, 146, 44,153 (July 22, 2020) ("FDIC Preamble") ("One commenter recommended that the FDIC revise the text of its proposed rule to reflect the intention not to preempt the true lender doctrine . . . ")  In response, the FDIC explained that no such revision was needed, stating: "The FDIC believes that the text of the proposed regulation cannot be reasonably interpreted to foreclose true lender claims." *Id.*  Then, in commentary addressing the "valid-when-made" doctrine in subsection (e), the FDIC flatly disavows the argument Plaintiffs advance on this point—that subsection (e) "*preempt[s] the application of state usury laws against assignees*"—explaining:

> Paragraph (e) is not intended to affect the application of State law in determining whether a State bank or insured branch of a foreign bank is a real party in interest with respect to a loan or has an economic interest in a loan.  The FDIC views unfavorably a State bank's partnership with a non-bank entity for the sole purpose of evading a lower interest rate established under the law of the entity's licensing State(s).

*Id.* at 44145.

Nor are the two case authorities cited by Plaintiffs on this point any more convincing. The first, *Gaither v. Farmers & Mechanics' Bank of Georgetown*, 26 U.S. 37 (1828), was decided 122 years before the FDIA became law and 35 years before passage of the National Bank Act, and does not anywhere address the issue of federal preemption of state laws.  The second authority on which Plaintiffs rely, *Krispin v. May Dep't Stores Co.*, did hold that the "valid-when-made" doctrine should extend federal preemption to loan assignees, but did so

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

based upon its finding that National Bank Act sections 85 and 86 give rise to "complete preemption" of state laws sufficient to defeat the well-pleaded complaint rule. *Id.*, 218 F.3d 919, 924 (8th Cir. 2000).

In the years since *Krispin* was decided, the Dodd Frank Act of 2010 enacted a provision—12 U.S.C. § 25b(b) – that expressly rejects field preemption of state consumer-finance laws by federal banking laws. The same provision of the Dodd Frank Act adopts a standard under which preemption only applies upon a showing that a state law would "have a discriminatory effect" on a national bank or would "prevent or significantly interfere with the exercise by the nation bank of its powers." *See* 12 U.S.C. 25b(b)(1); *Cantero v. Bank of America, N.A.,* 602 U.S. 205, 213-214 (2024). (discussing the Dodd Frank Act's articulation of a new banking preemption standard).

In the wake of the Dodd Frank Act's new standard, the proper preemption analysis was articulated by the *Avant* court, which examined in detail the exact argument Plaintiffs make here. See *Avant*, 307 F. Supp. 3d at 1144 ("Avant argues that under common law principles the assignee of a loan 'steps into the shoes of the assignor' [] and thus 'the complete preemption of state usury law [by section 27] survives the assignment of the loans"). The purpose of Section 27, the *Avant* court concluded, was to "prevent discrimination against State-chartered insured depository institutions," and Section 27's text evinces no intent to foreclose state enforcement claims against "one which later acquires or is assigned a loan made or originated by a state bank." *Id.* at 1144-45.

This Court should reject Plaintiffs' contention that Section 27 shields them from DFR's enforcement action because Plaintiffs are, at least nominally, loan assignees from a state-chartered bank.

### C. DFR Adequately Alleges True Lender Claims Against Plaintiffs.

Courts have likewise rejected the argument, "routinely" made by non-bank affiliates charged in rent-a-bank schemes, that federal preemption should apply because state enforcers

Page 13 -  DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

alleging true lender theories have "manipulate[d] their pleadings to avoid preemption." See, *e.g.*, *Avant*, 307 F. Supp. 3d at 1147 ("the Court finds this is not a case where the Administrator is 'suing the wrong party' or manipulating her pleadings to avoid preemption."); *Elevate Credit*, 554 F. Supp. 3d at 137 ("Courts that have addressed the complete preemption question in rent-a-bank schemes like this one have wrestled with similar arguments, which non-bank entities defendants routinely make.").[5]

To assess whether "true lender" claims are sufficiently alleged by state administrative agencies, courts have examined the allegations within the context of the "predominant economic interest" framework. See, *e.g.*, *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *14 (W. Va. May 30, 2014) (collecting cases). For example, in *Elevate Credit*, the court held the District of Columbia had "adequately alleged" its "true lender" claim where it alleged that the non-bank affiliates it charged with usury violations had purchased between ninety and ninety-six percent of the receivables interest in the relevant bank loans, directed and controlled the funding on those loans, took "the risk of the bad loans," and acted as servicer on the loans. *Elevate Credit*, 554 F. Supp. 3d at 138-39. The *Marlette* decision likewise found the state had

---

[5]    Plaintiffs complain that DFR's allegations that Plaintiffs are the real parties in interest on the Oregon loans reflect a "novel 'true lender' theory that appears nowhere in Oregon's statute or regulators." (ECF No. 1 at 5.) The theory is not novel, however, and Plaintiffs misstate Oregon law, which has long recognized that lenders may not evade the effect of Oregon's usury restrictions through deceptive transaction structuring. As the Oregon Supreme Court explained in *Fidelity Security Corp. v. Brugman*, 137 Or. 38 (1931):

> The courts do not permit any shift or subterfuge to evade the law against usury. The form into which parties place their transaction is unimportant. Disguises are brushed aside and the law peers behind the innocent appearing cloaks in quest for the truth. Even the parol evidence rule interposes no objection. If the transaction was, in fact, a loan of the kind denounced by the law of usury, no form to which the parties could resort for purposes of creating false appearances of innocence would be invulnerable to attack by the truth.

(*citing* Wigmore on Evidence, § 2414; 39 Cyc. Usury, 1054; *Terry Trading Corporation v. Barsky*, 210 Cal. 428 (1930).)

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

"sufficiently alleged" its true lender theory by alleging that the defendant non-bank affiliate "provides the website through which customers apply for the [loans], develops the criteria for making loans, [] decides which applicants will receive the loans, and [] purchases the loans within two days after they are made." *Id.*, 2018 WL 1417706 at *3. And, in *Avant*, the district court held the "true lender" theory was sufficiently alleged where the state had alleged that the defendant non-bank affiliate "services and administers the loans, bears all the risk on the loans in the event of default, pays all the legal fees and expenses related to the lending program, retains 99% of the profits on the loans, and indemnifies [the bank] against all claims arising from [the bank's] involvement in the loan program." *Avant, LLC*, 307 F. Supp. 3d at 1147-48.

Here, DFR's allegations in the Cease & Desist Order directly track those deemed sufficient in *Elevate Credit*, *Marlette*, and *Avant*. DFR's Cease & Desist Order charges that LoanMart entered into a "Marketing and Program Management Agreement" with the Bank pursuant to which LoanMart agreed, among other things, to "promote, market, and solicit" the Oregon Loans, "receive and accept consumer applications for such loans," and to "originate and service" the loans by processing loan applications, evaluating borrower credit criteria, disbursing loan funds, handling all borrower communications, receiving and processing loan payments, and conducting collections activities. (ECF No. 6-1 at 5.) Not much of a role was left for the Bank.

Additionally, the Cease & Desist Order charges that WFG, LoanMart's loan-purchasing subsidiary, entered into a "Participation Agreement" with the Bank whereby it "agreed to, and did, purchase a 95-100% interest in all loans originated and funded under the program established pursuant to the Marketing and Program Management Agreement." (ECF No. 6-1 at 5.) As a result, DFR alleges, "[a]lthough the agreements evidencing the Oregon Loans identified the Bank as the 'Lender' for each of the Oregon Loans, [LoanMart], together with certain of its affiliates, including WFG, bore all or substantially all of the economic risks associated with the Oregon Loans and received all or substantially all of the economic benefits associated with the

Page 15 - DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Oregon Loans." (ECF No. 6-1 at 6.) Under the "predominant economic interest" framework, therefore, DFR has more than adequately alleged a "true lender" theory against Plaintiffs.

Plaintiffs do not meaningfully dispute the allegations in the Cease & Desist Order. (See generally ECF No. 1.) Instead, Plaintiffs merely state that under the Participation Agreement with WFG "the Bank was permitted—but not required—to offer participation interests in eligible Oregon Bank Loans to WFG." (ECF No. 1 at 16.) Notably, this characterization does not actually dispute DFR's allegation that, regardless whether it was "required" to or not, the Bank participated *all* of its Oregon Bank Loans to WFG. Similarly, Plaintiffs insist that "the Bank also retains an economic interest in the Oregon Bank Loans, even after selling participation interests to WFG." (ECF No. 1 at 16.) But again, this characterization does not actually dispute DFR's allegation that after participating the loans to WFG, the Bank retained less than five-percent exposure and, therefore, did not hold the "predominant economic interest" in the Oregon loans.

Plaintiffs obscure the Bank's limited role in the redacted Participation Agreement between WFG and the Bank that is attached to Plaintiffs' pleadings. (ECF No. 5-1 at 98-123.) That version of the agreement blacks out the terms showing the loan exposure percentages WFG was required to purchase and those the Bank permitted to retain. An unredacted version of this same agreement, attached as Exhibit B to the concurrently filed Declaration of Dorothy Bean in Support of Defendants' Opposition (the "Bean Decl."), shows that WFG's "participation percentage" was set, by contract, at ninety-five percent for performing loans, and 100 percent for non-performing, or "charged off," loans. (Bean Decl., Ex. B at 6.)

Plaintiffs' redacted attachment additionally obscures the Participation Agreement subsection governing "Charged Off Participation Loans." (Bean Decl., Ex. B. at 11.) Whereas the Complaint alleges that, despite participating the Oregon Loans to WFG, the Bank nonetheless "retains title to (*i.e.* ownership of) all loans, including the Oregon Bank Loans, as well as the collateral as the secured party for many of the motor-vehicle-secured loans" (ECF No. 1 at 17), the unredacted version of this section of the Participation Agreement shows that this

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

is mere legal fiction.  Regardless whether the Bank may "retain title," the proceeds of any liquidation on non-performing loans is split between the Bank and WFG according to their participation percentage—that is, the Bank's real economic exposure is less than five percent. (Bean Decl., Ex. B at 6 and 11.)

These real, unredacted percentages are particularly meaningful in light of the usury violations DFR has alleged against Plaintiffs.  The unredacted document shows that the Bank's economic exposure to the lending activity—in particular to the "charged off" loans borrowers have been unable to repay—is minimized in a way that perverts the natural economic disincentive the Bank might otherwise have had to extend loans in the first place to Oregon consumers it knew or suspected could not afford to pay the usurious interest rate LoanMart was charging.

Consequently, even to the extent Plaintiffs can be interpreted to argue that DFR is "suing the wrong party," the Cease & Desist Order makes clear and substantial allegations that Plaintiffs, and not the Bank, possess the predominant economic interest in the Oregon Loans. DFR's "true lender" theory is, thus, adequately alleged and Plaintiffs' Complaint makes no allegations sufficient to meaningfully dispute it.  For these reasons, this Court should hold, like the courts did in *Elevate Credit*, *Marlette*, and *Avant*, that the prospect of any potential preemption defense by Plaintiffs is insufficient to establish subject-matter jurisdiction.

## III.    DISMISSAL UNDER *YOUNGER* ABSTENTION IS PROPER IN THIS CASE.

Even if the Court determines that the federal preemption question would be sufficient to premise federal subject-matter jurisdiction in other circumstances, the doctrine of *Younger* abstention instructs that the Court should nonetheless abstain from exercising jurisdiction in deference to the State of Oregon's ongoing civil enforcement proceedings, and leave the question of federal preemption to be decided, in the first place, within the State's enforcement proceeding.

In *Younger v. Harris*, the Supreme Court's held that, absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions.  *Id.*, 401 U.S. 37 (1971).

Page 17 -  DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

The principle of "*Younger*" abstention has since been extended to dismiss collateral attacks against state civil and administrative enforcement matters.  *See*, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 447 U.S. 619, 627 (1986); *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) ("Although *Younger* itself involved potential interference with a state criminal case, the Supreme Court has extended the doctrine to federal cases that would interfere with state civil cases and state administrative proceedings.").

"*Younger*'s central meaning is that a federal district court may not, save in exceptional circumstances, enjoin, at the behest of a person who has actually or arguably violated a state statute, a state court proceeding to enforce the statute against the person."  *State Farm Mut. Auto. Ins. Co. v. Metcalf,* 902 F. Supp. 1216 (D. Haw. 1995) (quoting *Nevada Entertainment Indus. v. City of Henderson*, 8 F.3d 1348, 1351 (9th Cir. 1993)).

Under the Ninth Circuit's four-pronged standard, *Younger* abstention applies where "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceedings in a way that *Younger* disapproves."  *Gibson v. Schmidt*, 522 F. Supp. 3d 804, 814 (D. Or. 2021) (quoting *San Jose*, 546 F.3d at 1092).  All four conditions are met here.

### A.    State Enforcement Proceedings Against Plaintiffs are Ongoing.

The parties do not appear to dispute that state administrative enforcement proceedings are ongoing.  DFR issued its Cease & Desist Order to Plaintiffs on July 25, 2023.  (See ECF No. 6 at 8.)  Under Oregon law, the Cease & Desist Order institutes a formal enforcement action and triggers a licensee's hearing right.  Or. Rev. Stat. §§ 725.400(1), 725.410.  Plaintiffs exercised their right to a hearing and, after many unsuccessful attempts to informally resolve this dispute,

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

DFR referred the matter for administrative hearing on September 24, 2024.  (ECF No. 6 at 8; Bean Decl. ¶¶ 8-10.)

**B.      DFR's Enforcement Proceeding Implicates Important State Interests.**

Courts of this circuit have routinely held that proceedings to enforce state consumer-finance laws, including state usury laws, protect important state interests sufficient to satisfy the second prong of the *Younger* standard.

This prong may be satisfied, in the first instance, where state enforcement proceedings serve a similar purpose to state criminal proceedings.  *See Metcalf*, 902 F. Supp. at 1218 ("The importance of state interest may also be demonstrated by the fact that the noncriminal proceedings bear a close relationship to criminal proceedings.")  Here, DFR's administrative action seeks civil enforcement of state consumer-finance protections against Plaintiffs through application of fines and penalties, and accordingly is "akin" to criminal enforcement within the meaning of *Younger*'s second prong.  See *id.* at 1218 ("Here, the State brought a civil action in order to enforce a state statute prohibiting unfair and deceptive advertising by insurance carriers. Such an action, allowing for fines and penalties for violations of the statute, is akin to criminal prosecution.")

Courts have commonly recognized that state enforcement of statutory consumer and lending standards implicates important state interests.  See, *e.g.*, *Epes v. Green Tree Servicing, LLC*, No. 3:04-cv-455, 2004 WL 5571941, at *10 (E.D. Va. Dec. 14, 2004) ("the state has an important interest in protecting citizens from predatory lender practices and usury"); *Communications TeleSystems Int'l v. California Pub. Utils. Comm'n*, 14 F. Supp. 2d 1165, 1171 (N.D. Cal. 1998) ("[T]he State of California has significant interests in protecting consumers within its borders from unfair business practices . . . .); *Metcalf*, 902 F. Supp at 1218 (Hawaii has a vital interest "in protecting consumers from unfair and deceptive trade practices by insurance carriers"); *WebBank v. Meade*, No. 17-cv-00786-PAB-MLC, 2018 WL 1399914, *2 (D. Col.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Mar. 19, 2018); *Cross River Bank v. Meade*, No. 17-cv-00832-PAB-KMT, 2018 WL 1427204, *3 (D. Col. Mar. 22, 2018).

An exemplary case is *Goleta National Bank,* where North Carolina's Commissioner of Banks initiated state proceedings against a national bank, Goleta, and its non-bank lending affiliate, Ace Cash Express, alleging the two had perpetrated a "rent-a-bank" scheme involving usurious payday lending in violation of North Carolina's consumer-finance statute. *Goleta National Bank*, 211 F. Supp. 2d 711, 715 (E.D. N.C. 2002). The bank and non-bank affiliate together petitioned the federal court to enjoin the action on federal preemption grounds. The federal court, however, had "little trouble concluding that *Younger* abstention [wa]s appropriate" as to the request for injunction. *Id.* at 715. Specifically, the federal court held that "for purposes of *Younger* abstention [North Carolina] does have a vital interest in protecting its citizens from predatory lending, usury, and other forms of deceptive trade practices." *Id.* at 716. "Any other conclusion," the *Goleta* court concluded, "would do harm to the principles of federalism and comity." *Id.* at 716-17.

Similarly, in *WebBank v. Meade*, the State of Colorado's Administrator of the Uniform Consumer Credit Code brought state enforcement proceedings against a non-bank loan purchaser and "servicing partner" of a state-chartered bank, alleging violation of Colorado's usury laws. *Id.*, 2018 WL 1399914 at *2. The state-chartered bank collaterally attacked the state's proceedings by asking a federal court for an injunction and declaration that the state proceedings were "expressly preempted by Section 27 of the Federal Deposit Insurance Act." *Id.* at *1. The district court dismissed the case on the basis of *Younger* abstention, holding that under the "state interest" prong, "enforcing laws regulating lending practices implicates an important state interest," and also that "[t]he relief the [state-chartered bank" seeks—an order enjoining the Administrator from enforcing Colorado's usury laws against anyone involved with its loans— would have a significant effect on the State's ability to regulate lending." *Id.* at *2; a*ccord Cross River Bank*, 2018 WL 1427204 at *3 ("Colorado has not only enacted its usury laws, but it has

Page 20 -  DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

also empowered a state official to enforce those laws through civil actions such as the

enforcement action, indicating an important state interest is implicated [under *Younger*'s second

prong].").

      Not unlike other states, Oregon has a vital state interest in enforcing its consumer-finance

law, including both its usury limitations and the special compliance requirements governing the

lending conduct of consumer-finance licensees like LoanMart. Oregon's strong state interest is

evidenced by the statutory scheme empowering a special agency to enforce that law through

administrative penalty proceedings and, similarly, the statutory scheme requiring consumer

finance lenders like LoanMart to seek and obtain a license from DFR before engaging in

consumer lending to Oregonians. See *WebBank*, 2018 WL 1399914 at *2. As such, the state

interests reflected in DFR's enforcement proceeding against Plaintiffs are sufficiently compelling

to satisfy *Younger*'s second prong, whereas the injunction Plaintiffs seek would impair Oregon's

ability to protect its consumers from predatory and usurious lending by licensees and non-

licensees alike.

      **C.**      **Plaintiffs' Preemption Defense Can be Heard in the State Proceeding.**

      As described above in Section I (*supra*), FDIC banking preemption does not apply to

state enforcement claims against non-bank participants in rent-a-bank schemes. But even strong

claims of federal preemption are not sufficient to defeat *Younger* abstention. *See Goleta*, 211 F.

Supp. 2d at 717 ("As a starting point, the court recognizes that even a substantial claim of federal

preemption does not preclude *Younger* abstention.") (citing *New Orleans Pub. Serv., Inc. v.

Council of New Orleans*, 491 U.S. 350, 366-67 (1989)). As a result, where banks and their non-

bank affiliates have collaterally attacked state usury enforcement actions, federal courts have

consistently found that the question of federal preemption may be resolved in the state

proceedings, whether judicial or administrative. *See Goleta National Bank*, 211 F. Supp .2d at

716 ("Indeed, a fundamental assumption of our federal system of government is that state courts

are perfectly capable of resolving questions of federal law, including preemption issues."); *Cross River Bank*, 2018 WL 1427204 at *2; *WebBank*, 2018 WL 1399914 at *2.

Abstention is no less appropriate here, where Plaintiffs have argued that the question of federal preemption is incorporated into the state law question the administrative tribunal must decide. According to Plaintiffs, the limited scope of Oregon's consumer-finance law makes it "harmonious" with Section 27 preemption because its "implementing regulations define 'loan' to mean 'a loan that is *subject to the [consumer finance law]*'" and the statute itself provides that it does not apply to lending by banks and "does not affect loans made or payable in other jurisdictions and lawful where made or payable." (ECF No. 1 at 12-13.) In virtue of Plaintiffs' own assertion, the question of federal Section 27 preemption's applicability is directly incorporated into the state-law issues that must already be decided in the DFR proceeding.

But even if Plaintiffs were to successfully argue that the preemption question raises issues of federal law that an administrative tribunal is unqualified to hear, the third *Younger* prong is still satisfied here because the factual findings and legal conclusions in any final administrative order may be timely appealed to the Oregon Court of Appeals. *See* Or. Rev. Stat. §§ 183.482, 184.470 ("A final order shall be accompanied by findings of fact and conclusions of law.")

Under the third *Younger* prong, it is sufficient "that constitutional claims may be raised in state-court judicial review of the administrative proceedings." *See Metcalf*, 902 F. Supp at 1218 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. at 652 (1986)); see also *Keneally v. Lungren*, 967 F.2d 329 (9th Cir. 1992).

Because the preemption issue on which this application is founded is already an indispensable issue in the state administrative proceedings, and additionally because Plaintiffs will have an opportunity to appeal the administrative outcome to the Oregon Court of Appeals, the third prong of the *Younger* test is satisfied.

Page 22 -  DEFENDANTS' MOTION TO DISMISS
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**D.    Plaintiffs Seek to Enjoin the DFR Proceeding.**

The fourth prong of the Ninth Circuit's *Younger* standard is satisfied where "the federal court action would enjoin the [state] proceeding or have the practical effect of doing so." Here, Plaintiffs specifically seek an order enjoining the DFR proceedings and a declaration that they may not proceed due to federal preemption, satisfying the fourth prong.

As a result, even if the Court finds that Plaintiffs' Complaint raises meaningful concerns of federal preemption under Section 27, the Court should nonetheless apply *Younger* preemption and leave the question of preemption to be heard first in the state action.

## CONCLUSION

For the foregoing reasons the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction or abstain from exercising jurisdiction in deference to the State of Oregon's enforcement proceeding against Plaintiffs under the doctrine set forth in *Younger v. Harris.*

DATED October 15, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Brian A. De Haan*
BRIAN A. DE HAAN  #155251
IAN VAN LOH #225163
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
ian.vanloh@doj.oregon.gov
Of Attorneys for Defendants

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791