ELLEN F. ROSENBLUM
Attorney General
BRIAN A. DE HAAN  #155251
IAN VAN LOH  #225163
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  ian.vanloh@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WHEELS FINANCIAL GROUP, LLC, d/b/a LoanMart and WFG PURCHASER, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW R. STOLFI, in his official capacity as Director of the Oregon Department of Consumer and Business Services, TK KEEN, in his official capacity as Administrator of the Oregon Department of Consumer and Business Services, Division of Financial Regulation, and DOROTHY BEAN, in her official capacity as Chief of Enforcement of the Oregon Department of Consumer and Business Services, Division of Financial Regulation,<br><br>Defendants. | Case No.  3:24-cv-01543-IM<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

Page 1 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
      IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## INTRODUCTION

Defendants Andrew Stolfi, TK Keen, and Dorothy Bean, each named exclusively in their official capacity with the Oregon Department of Consumer and Business Services,[1] urge this Court to deny Plaintiffs' motion for preliminary injunction for want of merit.[2] The two Plaintiffs—Wheels Financial Group, LLC, d/b/a LoanMart ("LoanMart"), an Oregon consumer-finance licensee, and WFG Purchaser, LLC ("WFG"), LoanMart's unlicensed, loan-buying subsidiary—fail to meet the extremely high standard applicable to motions for preliminary injunction. As explained below, Plaintiffs lack a likelihood of success on the merits, any irreparable injury or cognizable hardship, much less a public interest furthered by the relief they seek. Plaintiffs' motion is little more than an effort to escape the consequence for violating a state licensing regime through a transparent rent-a-bank scheme.

## STATEMENT OF RELEVANT FACTS

### I. Oregon's Consumer Finance Law.

Oregon's Consumer Finance Act (CFA), Oregon Revised Statutes section 725.010, *et seq.*, is the cornerstone of its consumer-protection efforts, the earliest versions of which were first enacted in 1955. The present version of the CFA encompasses the whole of Oregon Revised Statutes, Title 54, Chapter 725. Together with supporting regulations and administrative guidance promulgated by the Department of Consumer and Business Resources (DCBS), the CFA establishes a comprehensive legal regime governing consumer-finance loan marketing, making, service, transferring, in the State of Oregon. Under the CFA, a person or business may not make a consumer finance loan of $50,000 or less or act "as an agent, broker or facilitator for a person that makes a consumer finance loan of $50,000 or less without first obtaining a license" from the DCBS. Or. Rev. Stat. § 725.045(1)(a); *see also* Or. Rev. Stat. § 725.120 (discussing

---

[1] Mr. Stolfi is Director of the Oregon Department of Consumer and Business Services. Mr. Keen is Administrator of the DCBS Division of Financial Regulation (DFR). Ms. Bean is DFR's Chief of Enforcement.

[2] Defendants have concurrently moved to dismiss this action.

Page 2 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
   IV1/dd2/974082605

availability of a license application and associated fee). Issuance of a license is expressly conditioned on compliance with the laws of the Oregon market. *See id*. § 725.140(1).

      DCBS may only issue a license upon the Director concluding that the "financial responsibility, experience, character and general fitness of the applicant . . . warrant the belief that the business will be operated honestly, fairly and efficiently within the purposes of this chapter," that none of the grounds requiring disapproval are present, and upon affirming that the applicant obtained the necessary surety bond. Or. Rev. Stat. § 725.140(1)(a)-(c); *see also id*. § 725.145 (specifying the grounds on which DCBS may disapprove a license application). Once issued, the license continues in full force until surrendered, revoked, or suspended. *Id*. § 725.140(2).[3]

      Licensees, and the loans they market, originate, service, or otherwise facilitate, are subject to exhaustive set of license conditions and limitations. For example, no licensee may take power of attorney from a borrower except in the narrow circumstance of transferring ownership in a motor vehicle subject to a motor-vehicle loan. Or. Rev. Stat. § 725.050(1). Licensees are also forbidden, *inter alia*, from engaging in deceptive or misleading advertising (*id*. § 725.060), transacting business within the ambit of the CFA under a name different than it appears on their license (*id*. § 725.210), withholding certain information from borrowers (*id*. § 725.360), or charging/benefiting from a consumer-finance loan with an interest rate exceeding thirty-six percent. *See* Or. Rev. Stat. § 725.340(1)(a) (setting the statutory cap on interest rates for consumer-finance loans). Licensees must also comply with DCSB administrative rules promulgated in accordance with the Oregon Administrative Procedures Act, Or. Rev. Stat. §

---

[3] In Plaintiffs' briefing, they indicate that their licenses were renewed while under investigation. (*See*, *e.g.*, ECF No. 1 at 18.) The continuation of this license (i.e., its renewal) is automatic absent a revocation proceeding or a brief period of suspension. *See* Or. Rev. Stat. §§ 725.140(2), 725.230 (discussing license revocation and suspension). Defendants' compliance with section 725.140(2) does not constitute ratification of Plaintiffs' consumer-finance investigations. Any suggestion to the contrary misunderstands Oregon law.

Page 3 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

183.310, *et. seq*. Or. Rev. Stat. § 725.505; *see also* Or. Admin. R. ("OAR") 441-730-0000, *et. seq*. (consumer-finance regulations).

To ensure licensee compliance with state consumer-finance laws and regulations, DCBS—acting through its Division of Financial Regulation ("DFR")—regularly investigates the loans and business operations of its licensees. Or. Rev. Stat. § 725.310(1); *see also* Or. Rev. Stat. § 725.312(1) (examinations "shall be conducted not more than 24 months apart). In furtherance of DFR's investigatory power, every licensee must furnish DFR with access to their place of business, books, accounts, safes and vaults upon the agency's request. Or. Rev. Stat. § 725.310(2)(a). Licensees must also produce records requested by DFR. Or. Rev. Stat. § 725.310(2)(b)(C).

If DFR finds reasonable cause to believe that a licensee has committed one or more violations of the CFA, regulations promulgated in furtherance of the CFA, or otherwise defied a lawful order of DCBS, DFR may issue and serve a cease-and-desist order to the licensee, or someone acting as a lender without a license. Or. Rev. Stat. § 725.400(1); *see also* Or. Rev. Stat. § 725.410 (codifying DFR power to institute enforcement actions). The order takes effect thirty (30) days after issuance unless the party named in the order requests a contested-case hearing under ORS Title 18, Chapter 183. Or. Rev. Stat. § 725.400(2),(3). Noncompliance with a cease-and-desist order exposes the licensee to suspension or revocation, as well as penalties. Or. Rev. Stat. § 725.400(5); *see also* Or. Rev. Stat. § 725.910 (listing civil penalties).

Contested-case hearings are adversarial, evidentiary proceedings conducted before a state hearing officer (an administrative law judge). *See* Or. Rev. Stat. § 183.413, *et. seq*. After the presentation of evidence and argument, the presiding hearing officer will "prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law." Or. Rev. Stat. § 183.464(1). The proposed order becomes final after 30 days or longer as fixed by agency rule or on the agency's determination that it needs additional time to adequately review the proposed order. Once the proposed order

Page 4 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

becomes final, any party aggrieved by that order may timely appeal it as well as its findings of fact and conclusions of law pursuant to Oregon Revised Statutes section 183.482. *See* Or. Rev. Stat. § 183.470. Review of the final order is performed by the Oregon Court of Appeals. Or. Rev. Stat. § 183.482.

## II.     Plaintiffs' Lending Activities.

Plaintiff LoanMart is an Oregon state consumer-finance licensee. (ECF No. 1 at 6; ECF No. 5-1 at 4.) WFG is LoanMart's loan-buying subsidiary. (ECF No. 1 at 6.) DCBS issued a consumer-finance license to LoanMart in August 2019. (ECF No. 6-1 at 5.) Between August 2019 and December 2022, LoanMart brokered and facilitated 659 vehicle loans to Oregon borrowers. (ECF No. 6-1 at 5.) Loans were funded via accounts at a Utah state-chartered bank, Capital Community Bank (the "Bank"). (ECF No. 5-1 at 10.) Subject to an earlier loan participation agreement with the Bank, LoanMart arranged for purchase of a ninety-five to 100 percent interest in the 659 Oregon loans via WFG. (ECF No. 6-1 at 5.) Despite these activities, WFG never obtained a DCBS license. (ECF No. 6-1 at 5.)

Beginning in early 2020, LoanMart was investigated by the State of California for marketing personal-finance loans exceeding that state's thirty-six percent-per-annum interest rate cap. (*See generally* Decl. D. Bean Supp. Defs.' Opp. ("Bean Decl."), Ex. D.)[4] On December 14, 2021, LoanMart entered into a consent order with the California Department of Financial Protection and Innovation (CDFPI), under which LoanMart ceased its practice of marketing loans exceeding California's interest-rate cap. (*See* Bean Decl., Ex. D; *see also* DFPI Reaches Agreement to End High-Interest Rate Loans Marketed by LoanMart for 21 Months, CDFPI, https://dfpi.ca.gov/wp-content/uploads/sites/337/2021/12/LoanMart-PR-Dec2021.pdf (last visited Oct. 14, 2024).)

---

[4]     As with the 659 Oregon loans at issue in the present action, LoanMart's California loans were also marketed and serviced on behalf of the same Bank. (*See generally* Bean Decl., Ex. D.)

Page 5 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
             INJUNCTION
    IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

### III.    DFR's Investigation and Enforcement Proceeding Against Plaintiffs.

DFR examined and investigated LoanMart in 2020, issuing the company a Report of Examination (ROE) in August 2020. (ECF No. 1 at 17.) The ROE stated that LoanMart was violating the CFA's usury provisions by brokering loans to Oregon borrowers charging annual interest in excess of thirty-six percent. (ECF No. 1 at 17.) DFR and LoanMart exchanged communications concerning the applicability of Oregon's usury statutes to LoanMart's lending throughout the remainder of 2020 and 2021. (*See* ECF No. 1 at 17-18.)

DFR examined and investigated LoanMart again in early 2022 and issued another ROE that August. (ECF No. 1 at 18.) The new ROE again stated that LoanMart was violating the CFA's usury provisions by brokering loans to Oregon borrowers charging annual interest in excess of thirty-six percent. (ECF No. 1 at 18.) The August 2022 ROE further informed LoanMart that the described "violations may be reviewed by the Oregon Department of Consumer and Business Services' Division of Financial Regulation for possible enforcement action." (ECF No. 1 at 18-19.) Following the August 2022 ROE, LoanMart and DFR exchanged positions on the alleged violations by letter and email for approximately nine months. (*See* ECF No. 1 at 19.)

On July 25, 2023, DFR sent LoanMart and WFG an Order To Cease And Desist, Proposed Order To Assess Civil Penalties, Proposed Order To Revoke License, And Notice Of Right To Administrative Hearing, dated July 25, 2023 (the "Cease & Desist Order"). (*See* Bean Decl., ¶4; Bean Decl., Ex. A.) The Cease & Desist Order noted that in LoanMart's lending arrangement with the Bank, LoanMart agreed to, among other things, "promote, market, and solicit" the Oregon Loans, "receive and accept consumer applications for such loans," and "originate and service" the loans by processing loan applications, evaluating borrower credit criteria, disbursing loan funds, handling all borrower communications, receiving and processing loan payments, and conducting collections activities. (Bean Decl., Ex. A at 2-3.) The Cease & Desist Order noted that LoanMart had issued 659 vehicle loans to Oregon borrowers with a total

Page 6 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
             INJUNCTION
    IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

principal value of approximately $2.3 million and that those car loans charged annual interest rates ranging from 58 to 202 percent.  (Bean Decl., Ex. A at 3; ECF No. 6-1 at 5-6.)  At the time, DFR estimated that LoanMart had improperly collected $4.6 million in interest on Oregon laws with annual interest rates exceeding thirty-six percent.  (Bean Decl., Ex. A at 3.)  DFR's Order additionally alleged that under the Participation Agreement WFG "agreed to, and did, purchase a 95-100% interest in all loans originated and funded under the program established pursuant to the Marketing and Program Management Agreement."  (Bean Decl., Ex. A at 4.)

The Cease & Desist Order explained that LoanMart's activities had violated Oregon's prohibition on taking overly broad powers of attorneys from Oregon borrowers in connection with consumer finance loans (Or. Rev. Stat. § 725.050(1)), conditioning loans on abusive attorney fee provisions (*id*. § 725.340(4)), and including lender-friendly hold harmless clauses in its consumer-finance loans in violation of OAR 441-730-0280(1).  (Bean Decl., Ex. A at 4-6.)  Additionally, in the Order, DFR specifically observed that, despite the Bank's nominal involvement, Plaintiffs "bore all or substantially all of the economic risks associated with each of the Oregon Loans and received all or substantially all of the economic benefits associated with each of the Oregon Loans"  (Bean Decl., Ex. A at 6.)  Based on this, DFR concluded that Plaintiffs were the "true lenders" of the Oregon Loans and that Plaintiffs had, therefore, violated the usury limitations within section 725.340(1)(a) as well as numerous other sections of the CFA.  (Bean Decl., Ex. A at 5-6.)

Plaintiffs requested an administrative hearing on DFR's Cease & Desist Order on August 11, 2023.  (Bean Decl. ¶8.)  Following Plaintiffs' hearing request, the parties engaged in further negotiations to resolve DFR's concerns short of a formal hearing.  (Bean Decl. ¶¶9-10.)  When negotiations reached an impasse, DFR referred the matter to the Office of Administrative Hearings on September 24, 2024.  (Bean Decl. ¶10.)

Page 7 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## STANDARD OF REVIEW

A motion for preliminary injunction is held to an exacting standard of proof. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (describing injunctive relief as "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" in order vacating a preliminary injunction). Whether a motion meets this high bar is a matter committed to this Court's discretion and reviewable for an abuse of the same. *See Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019).

## ARGUMENT

A plaintiff seeking a preliminary injunction must establish that the balance of four factors weigh in the plaintiff's favor: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. In at least some cases "a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "As a general matter, district courts must consider all four *Winter* factors." *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014) (citation and internal quotation omitted); *but see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits). "When . . . the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Here, the *Winter* factors militate in favor of Defendants.

### I. PLAINTIFFS LACK OF A LIKELIHOOD OF SUCCESS ON THE MERITS.

To merit preliminary-injunctive relief under *Winter*, Plaintiffs must first establish that they are likely to succeed on the merits of their claim. *See Baird*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation omitted). A movant's ability to show a likelihood of success on the merits "is a

Page 8 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
                    INJUNCTION
         IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

threshold inquiry" and "the most important" *Winter* factor.  *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

Based on Plaintiffs' complaint, which seeks to take advantage of state-law preemption afforded to out-of-state banks under the FDIA (see generally ECF No. 1), Plaintiffs must prove that they are not the true lender of the 659 usurious loans at the heart of DFR's enforcement action, but merely the agents of, and third-party participants in the benefits of loans issued by, an out-of-state bank exempt from the interest-rate cap imposed by section 725.340(1)(a)(A).  In this case, however, Plaintiffs have not provided the full picture needed to evaluate their true-lender status.

Based on DFR's investigation of LoanMart, DFR concluded that Plaintiffs, and not their out-of-state bank affiliate, were the "true lenders" of the Oregon loans.  (*See* Bean Decl., Ex. A at 6.)  As relayed in its Cease & Desist Order, DFR found that Plaintiffs "bore all or substantially all of the economic risks associated with each of the Oregon Loans and received all or substantially all of the economic benefits associated with each of the Oregon Loans."  (Bean Decl., Ex. A at 6.)  This conclusion was informed by Plaintiffs' own records.  For example, Plaintiffs used a designated account from the Bank to fund the Oregon loans.  (*See*, *e.g.*, Bean Decl., Ex. C at 9.)  While true that title to these loans was maintained in the name of the Bank, it was Plaintiffs who originated the loans, made all decisions about loan terms and borrower eligibility, and who ultimately purchased majority participation interests in all of the loans.  (*See* Bean Decl., Ex. B at 6, 11; Bean Decl., Ex. C at 4-9; *see also* Bean Decl., Ex. A at 4-7.)  Through this set of transactions, Plaintiffs gave themselves nearly all economic upside and downside exposure to the loan portfolio, leaving the Bank with only a nominal connection to the loans.

Plaintiffs appear to dispute DFR's conclusions.  Plaintiffs insist that "the Bank was permitted—but not required—to offer participation interests in eligible Oregon Bank Loans to WFG," and that "the Bank also retains an economic interest in the Oregon Bank Loans, even

Page 9 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
            INJUNCTION
    IV1/dd2/974082605

after selling participation interests to WFG." (ECF No. 1 at 16-17.) But Plaintiffs' account of participation interests is at best incomplete—and the full story is damning.

The Particiaption Agreement between WFG and the Bank shows that the participation interests the Bank sold to WFG were either ninety-five percent or, for "charged off" loans, 100 percent, meaning the Bank retained five percent or less total economic exposure to the loans after the participation sale. (*See* Bean Decl., Ex. B (Unredacted Participation Agreement dated December 21, 2018).)[5] Per the terms of the agreement, WFG was obligated to purchase every loan the Bank offered for sale, permitting the Bank to dump nearly all of its exposure in the Oregon loan portfolio to WFG. And that is what DFR alleges the Bank did. (ECF No. 6-1 at 5.)

Plaintiffs also allege that "[a]lthough the Bank sold participation interests in certain Oregon Bank Loans to WFG, the Bank retains title to (i.e. ownership of) all loans, including the Oregon Bank Loans, as well as the collateral as the secured party for many motor-vehicle-secured-loans." (ECF No. 1 at 17.) But once again Plaintiffs' explanation is incomplete. Under Section 4 of the Participation Agreement, pertaining to "Charged Off Participated Loans," the Bank may retain title and secured party status on the Oregon loans in only a very limited sense. (Bean Decl., Ex. B at 6, 11.) That is because the agreement provides for collateral liquidation divesting the Bank of nearly all benefits and risks of the loans in favor of WFG—per the agreement, at least ninety-five percent of collateral liquidation goes to WFG. (Bean Decl., Ex. B at 6, 11.) And despite Plaintiffs' assurances that the Bank retains title and secured party status on "many" of the Oregon loans, the agreement's "Participation Percentage" term expressly states that WFG's percentage interest increases from ninety-five percent to 100 percent when the

---

[5] Plaintiffs have supplied their own copy of the agreement under which WFG purchases participation interests in the Oregon loans, (ECF No. 5-1 at 99-123), but Plaintiffs have redacted out the relevant participation percentages, obscuring the allocations of benefits and risks between WFG and the Bank. (*Compare* ECF No. 5-1 at 99-123 *and* Bean Decl., Ex. B (Unredacted Participation Agreement dated December 21, 2018).)

Page 10 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Bank has "charged off" a loan—allowing the Bank to completely eliminate any exposure it has to non-performing loans. (*See* Bean Decl., Ex. B at 6.)

The full picture painted by the Participation Agreement supports DFR's conclusion that WFG, and not the Bank, "bore all or substantially all of the economic risks associated with each of the Oregon Loans and received all or substantially all of the economic benefits associated with each of the Oregon Loans." (Bean Decl., Ex. A at 6.) Because WFG's role in the Oregon loans is that of the true lender, Plaintiffs are not entitled to FDIA preemption and, therefore, cannot demonstrate a likelihood of success on the merits of their preemption claim.

The first *Winter* factor clearly favors denial of Plaintiffs' motion.

## II.    PLAINTIFFS LACK A PLAUSIBLE LIKELIHOOD OF IRREPARABLE INJURY.

A likelihood of irreparable injury "is the *sine qua non* for obtaining a preliminary injunction." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, No. CV 23-3562, 2024 WL 1121424, at *7 (D.D.C. Mar. 15, 2024) (quoting *Shaw v. Austin*, 539 F. Supp. 3d 169, 182 (D.D.C. 2021)). To prevail on this factor, the movant must "demonstrate that irreparable injury is likely in the absence of an injunction." *Park Vill. Apartment Tenants Ass'n. v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). This requires "a clear showing" (*Winter*, 555 U.S. at 22) of "a likelihood of *substantial and immediate* irreparable injury." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added); *accord Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (holding the threatened harm must be "immediate" in character); *see also Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311 (1982) (holding that an injunction should not issue as a matter of course for irreparable harm that is "merely trifling").

Alleged harms must not be speculative in nature. *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."). Nor are purported injuries considered irreparable where an alternative forum provides the movant with an adequate remedy. *See*, *e.g.*, *NLRB v. Bluefield Hosp. Co.*,

Page 11 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

*LLC*, 902 F.3d 432, 441 (4th Cir. 2018) (movant failed to show that administrative proceedings were an inadequate alternative forum for obtaining appropriate relief); *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999) (reversing preliminary injunction where arbitration presented the movant with an adequate remedy in which it could raise the same defenses).

In this action, Plaintiffs attempt to identify several irreparable injuries entitling them to injunctive relief (see ECF No. 4 at 32-33), but each fails in one or more crucial respects. First, Plaintiffs contend that they stand to lose money *if* further administrative proceedings—namely the contested-case hearing governed by both Oregon's Administrative Procedures Act and rules promulgated by the Oregon Department of Justice—do not ultimately resolve in Plaintiffs' favor. (*See* ECF No. 4 at 32.) Specifically, Plaintiffs report that *if* they lose before the administrative law judge, their loans will be void and WFG will lose revenue from its overwhelming participation interest in the usurious loans serviced by LoanMart. (ECF No. 4 at 32.) These purported injuries will only come to pass in a contingent future where Plaintiffs lose the contemplated contested case hearing and, later, fail to overturn the decision before the Oregon Court of Appeals. *See generally* Or. Rev. Stat. § 183.482 (providing for Court of Appeals jurisdiction and setting standards of judicial review for final orders in contested cases). These harms are plainly speculative and, consequently, insufficiently irreparable for injunctive relief. See *Goldie's Bookstore, Inc.*, 739 F.2d at 472.

Plaintiffs' own assertions that Oregon law is on their side would suggest that they have nothing to fear from the very administrative proceedings that they now seek to derail. (*See* ECF 4 at 29-30.) This too indicates that their potential losses are far from imminent and, therefore, far from irreparable. Just as importantly, this discussion establishes that Plaintiffs have an adequate remedy in law in the form of a contested-case hearing presided over by an administrative law judge. (*See* Bean Decl. ¶¶8,10.) Plaintiffs point to nothing to suggest they would be prevented from asserting preemption in an administrative hearing, and, in fact, no such restriction exists. The availability of this alternative forum vitiates any argument that Plaintiffs are likely to suffer

Page 12 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

irreparable harm absent an injunction from this Court. See *Bluefield Hosp. Co., LLC*, 902 F.3d at 441 (holding that an adequate remedy in the form of administrative proceedings defeats the need for a preliminary injunction). Further, while Plaintiffs complain about the legal expense of defending themselves in ongoing state administrative proceedings, the mere expense of litigation, even when it presents a "substantial and unrecoupable cost, does not constitute irreparable injury." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 (9th Cir. 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974)).

Perhaps aware that they lack a legitimate likelihood of irreparable harm, Plaintiffs invoke case law stating that when a constitutional violation is present, irreparable injury is established or presumed. (*See* ECF No. 4 at 31-32.) The problem with this particular line of argument is twofold. First, the case law at issue narrowly concerns circumstances involving the infringement of a constitutional right, not federal preemption more broadly. *See*, *e.g.*, *Associated Gen. Contractors v. Coal. For Economic Equity*, 950 F.2d, 1401, 1412 (9th Cir. 1991) ("We have stated that an alleged constitutional infringement will often alone constitute irreparable harm"); *Baird*, 81 F.4th at 1042 ("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary") (citations and amendments omitted); *Meta Platforms, Inc. v. Fed. Trade Comm'n*, No. CV 23-3562, 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024) ("[O]ngoing or imminent violations of fundamental constitutional rights, such as the loss of First Amendment freedoms, constitute irreparable injuries.") Second, Plaintiffs are not seeking to vindicate a fundamental constitutional right. (*See* ECF No. 4 at 30-33.) No constitutional right is at issue in this case nor in the ongoing state administrative proceedings. (*See generally* ECF No. 4.) Rather, Plaintiffs assert federal preemption (ECF No. 4 at 31; *see also* ECF No. 1 at 4), a defense that they have available to them before the administrative law judge. There is, therefore, no constitutional injury placing this matter within the line of cases affording fundamental rights special solicitude.

Page 13 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
           INJUNCTION
   IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Because Plaintiffs cannot point to a nonspeculative, substantial and imminent irreparable harm that is likely to befall them absent the issuance of a preliminary injunction, they lack the kind of injury necessary to merit injunctive relief. Accordingly, the second *Winter* factor favors denial of Plaintiffs' motion for preliminary injunction.

## III. THE EQUITIES AND PUBLIC INTEREST FAVOR DENIAL OF PLAINTIFFS' MOTION.

Courts presented with a motion for preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 7, 24 (citation omitted). As part of weighing these considerations, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*.

### A. Plaintiffs' Equity and Public Interest Arguments Fall Short.

Plaintiffs contend the combined *Winter* factors of equities/harms balancing and public interest fall in their favor. (*See* ECF No. 4 at 34.) Their contentions lack merit.

Plaintiffs primarily engage with equities analysis by contending that when a party's constitutional rights are invaded, "the public interest and the balance of the equities are tipped in the plaintiff's favor." (ECF No. 4 at 34.) This tipping-point argument relies on inapposite cases that concern basic freedoms protected by the Bill of Rights, not preemption or the interpretation of Oregon consumer protection law. (*See* ECF No. 4 at 34.) *Meinecke v. City of Seattle*, for example, is a preliminary-injunction action by an evangelist who claims abridgment of his first amendment rights. *Id*., 99 F.4th 514, 519-21 (9th Cir. 2024). It is in the context of individual rights that the *Meinecke* court opines "[w]hen a party raises serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in its favor." *Id*. at 526 (initial amendment added, further amendments and quotations omitted) (citations omitted). The two other cases that Plaintiffs cite in support of their tipping-point position (*see* ECF No. 4 at 34) likewise involve only basic constitutional rights. *See Baird*, 81 F.4th at 1048 (a preliminary injunction concerning Second-Amendment infringement); *Riley's Am. Heritage Farms v.*

Page 14 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
            INJUNCTION
        IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Elsasser*, 32 F.4th 707 (9th Cir. 2022) (concerning a claim for prospective relief based in the First Amendment). By contrast, Plaintiffs' preemption argument does not touch on the exercise of basic constitutional rights; Plaintiffs, therefore, are not entitled to any kind of presumption that the equities and public interest fall in their favor.

Plaintiffs' other arguments relating to the balance of harms and public interest are similarly unavailing. First, Plaintiffs contend, without citation to supporting authority, that the public interest lies with them because the public interest favors both prohibiting state enforcement of preempted laws and a stable regulatory landscape. (ECF No. 4 at 35.) Second, Plaintiffs contend that they have suffered and will suffer "financial repercussions" if not protected from further administrative proceedings.

As to the first of these contentions, Plaintiffs have not shown a likelihood of success on the merits, much less proven a basis for preemption of DFR's enforcement efforts. As a result, Plaintiffs' suggestion that the public interest favors them on this point is wholly question begging. As to Plaintiffs' second point—which is merely a rehash of earlier arguments concerning litigation expenses and the contingent possibility that Plaintiffs will lose in their state administrative hearing (*see* ECF No. 4 at 32-34)—it is worth noting that Plaintiff LoanMart availed itself of a license to solicit and service loans in Oregon. (*See* Bean Decl., Ex. A at 2.) By the time LoanMart acquired its license in 2019, it had access to a longstanding Opinion of the Oregon Attorney General noting that CFA's interest cap (*see* Or. Rev. Stat. § 725.340(1)(a)) applied to out-of-state companies soliciting loans in Oregon. *See* 41 Or. Op. Atty. Gen. 212, 1980 WL 113359, at *1, 4. Indeed, by the time DFR initiated this enforcement action in 2023, LoanMart had already entered a consent decree to abide by California's thirty-six-percent interest cap on loans made by Capital Community Bank. (*See* Bean Decl., Exs. A, D.) WFG, for its part, should have understood that acquiring participation interests in void Oregon loans was at least a risky investment. For Plaintiffs, DFR's proceedings and their financial consequences were a foreseeable risk of doing business in Oregon.

Page 15 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
                INJUNCTION
     IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

In bringing the instant lawsuit, Plaintiffs essentially ask this Court to deem the foreseeable costs of their doing business in Oregon to be harms justifying exceptional equitable relief. The equities are not in Plaintiffs' favor.

### B. The Equity and Public Interest Factors Favor the State of Oregon Consumer Protection Regime.

Both the equities and public interest favor DFR and the denial of Plaintiffs' motion. It is unquestionably in the public interest for a state to enforce its consumer-protection laws. *Montoya v. CRST Expedited, Inc.*, No. CV 16-10095-PBS, 2020 WL 2850235, at *2 (D. Mass. June 2, 2020). And the State of Oregon doubtless has an interest in the consistent enforcement of its consumer-protection laws and the preservation of the marketplace stabilized by those laws. This state interest in consumer protection is consistently observed in other consumer-protection contexts. *See*, *e.g.*, *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (recognizing "Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices"); *Washington v. CLA Estate Servs., Inc.*, NO. C18-480, 2018 WL 2057903, at *1, n.2 (W.D. Wash. May 3, 2018) (noting "widespread legal support for the State's position that its suit to enforce its quasi-sovereign interest in guaranteeing an honest marketplace and the economic welfare of its citizenry"); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. C 07–1827 SI, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011) (noting that states have an "interest in the enforcement of their consumer protection and . . . in securing an honest marketplace and the economic well-being of their citizens").

"The consideration of the public interest is designed to ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Wickapogue 1 LLC v. Blue Castle (Cayman) Ltd.*, 657 F. Supp. 3d 234, 242 (E.D.N.Y. 2023) (citations omitted). Here, a preliminary injunction would throw Oregon's regulated consumer-finance-loan market into disarray, raise questions about the State's long-establish interest-rate cap, and create a bizarre asymmetry between protections available to Oregon citizens and residents of California, where

Page 16 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
            INJUNCTION
    IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiffs have agreed to abide by the latter state's consumer-protection laws and interest cap. (*See* Bean Decl., Ex. D.)

Because the above-mentioned harms to the State of Oregon and its citizens, as well as the public interest in robust consumer-protection regimes, considerably outweigh the contingent harms articulated by Plaintiffs, the final *Winter* factors favor denial of Plaintiffs' motion.

Page 17 -  DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
           INJUNCTION
       IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# CONCLUSION

Plaintiffs are plainly engaged in a rent-a-bank scheme to skirt Oregon's consumer-protection laws while enjoying all of the profits and power that come with being the true lender of the Oregon loans. Plaintiffs' California consent order makes this arrangement clear. Informed by the consent order and other evidence, the *Winter* factors compel the denial of Plaintiffs' motion for preliminary in junction. Plaintiffs' lack any likelihood of success on their claim and any irreparable injury, favor, if not require, the denial of their motion. The balance of equity and harms, as well as the public interest, similarly favor denial of Plaintiffs' motion. Any federally ordered delay of DFR's ongoing administrative proceedings, however, will serve to unsettle the State's consumer-protection regime and sow confusion with Oregon's loan marketplace. These harms can be avoided by returning the parties to the Oregon administrative process. Plaintiffs may raise all of their same arguments in the contested-case hearing that they requested in 2023; they are in no way hindered by the nature of the forum. The State seeks only to apply its consumer-protection laws in keeping with its longstanding interpretation of the same. For these reasons, Defendants respectfully request that this Court exercise its considerable discretion to protect Oregon's laws, its administrative processes, and its citizens, by denying Plaintiffs' motion for preliminary injunction.

DATED October 15, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Ian Van Loh*
BRIAN A. DE HAAN  #155251
IAN VAN LOH #225163
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
ian.vanloh@doj.oregon.gov
Of Attorneys for Defendants

Page 18 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
IV1/dd2/974082605

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791