IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WHEELS FINANCIAL GROUP, LLC**, d/b/a LoanMart; and **WFG PURCHASER, LLC**,<br><br>Plaintiffs,<br><br>v.<br><br>**ANDREW R. STOLFI**, in his official capacity as Director of the Oregon Department of Consumer and Business Services; **T.K. KEEN**, in his official capacity as Administrator of the Oregon Department of Consumer and Business Services, Division of Financial Regulation; and **DOROTHY BEAN**, in her official capacity as Chief of Enforcement of the Oregon Department of Consumer and Business Services, Division of Financial Regulation,<br><br>Defendants. | Case No. 3:24-cv-01543-IM<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS** |

Thomas N. Abbott, Troutman Pepper Locke LLP, 100 SW Main Street, Suite 1000, Portland, OR 97204; James Kim, Troutman Pepper Locke LLP, 875 Third Avenue, New York, NY 10022; Jason D. Evans, Anais M. Jaccard, and Daniel J. Prichard, Troutman Pepper Locke LLP, 301 S. College Street, 33rd Floor, Charlotte, NC 28202; and Caleb N. Rosenberg, Troutman Pepper Locke LLP, 401 9th Street NW, Suite 1000, Washington, DC 20004. Attorneys for Plaintiffs.

Ian Van Loh and Brian A. de Haan, Senior Assistant Attorneys General, and Ellen F. Rosenblum, Attorney General, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Attorneys for Defendants.

**IMMERGUT, District Judge.**

This matter is before this Court on a Motion for Preliminary Injunction brought by Plaintiffs Wheels Financial Group, LLC ("Loanmart") and WFG Purchaser, LLC, ECF 4. That Motion seeks to enjoin Defendants Andrew R. Stolfi, T.K. Keen, and Dorothy Bean from enforcing the Oregon Consumer Finance Act against Plaintiffs. Plaintiffs argue that the Act, including O.R.S. 725.340's prohibition on charging usurious interest rates, is preempted by Section 27 of the Federal Deposit Insurance Act. Defendants oppose the Motion and filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing this Court lacks subject-matter jurisdiction and should abstain in favor of a pending state administrative proceeding. ECF 31. This Court held oral argument on both motions, ECF 47, and addresses these motions together.[1]

This Court concludes that it has subject-matter jurisdiction over the Complaint, but that abstention is warranted under *Younger*. A state proceeding was ongoing before any proceedings of substance occurred in this action, Plaintiffs' preemption argument is not "readily apparent" such that abstention is inappropriate, and Plaintiffs have not demonstrated that "extraordinary circumstances" counsel against abstention. This Court therefore grants the motion to dismiss.

## BACKGROUND

The following facts come from Plaintiffs' complaint and declarations submitted by the parties. Plaintiff Wheels Financial Group ("LoanMart") is a non-bank entity that markets auto title loans to consumers in several states, including Oregon. Complaint ("Compl."), ECF 1 ¶¶ 2, 60, 72. To issue these loans, LoanMart and its subsidiary, Plaintiff WFG Purchaser, LLC, have

---

[1] The parties agreed to a joint briefing schedule for these motions. *See* ECF 28.

PAGE 2 – OPINION GRANTING MOTION TO DISMISS

formed a partnership with Capital Community Bank ("CC Bank"), a Utah state-chartered bank.[2] *Id.* ¶¶ 2, 55–56, 58, 60. Utah does not cap the interest rates that may be charged on consumer loans. Utah Code Ann. § 15-1-1(1) (West 2024). As part of the partnership, CC Bank originates loans, which "often" have interest rates exceeding 36%. Compl., ECF 1 ¶¶ 59, 65. CC Bank, the named "lender" on each loan agreement, then sells a participation interest in these loans to LoanMart through WFG Purchaser, LLC. *Id.* ¶¶ 65, 71–72. LoanMart performs many of the traditional functions of a lender, such as marketing, servicing, and collections. *See id.* ¶ 62. LoanMart continues to charge the original interest rate, even if it exceeds the Oregon cap on interest rates. Loans to Oregon borrowers made through this partnership carried annual percentage rates between 61.95% and 202.86%. Declaration of Rainer Walk, ECF 6, Ex. F at 40.

The Oregon Department of Consumer and Business Services ("DCBS") began investigating LoanMart in 2020 for violations of Oregon's usury law. Compl., ECF 1 ¶ 75. DCBS's Division of Financial Regulation ("DFR") eventually issued a cease-and-desist order to LoanMart in July 2023. *Id.* ¶ 87. DFR's theory of the case is that CC Bank essentially "rents" its status as a state-chartered bank to LoanMart to enable LoanMart to charge usurious interest rates to Oregon consumers. *See id.* ¶ 89. LoanMart requested a contested-case hearing before a state administrative law judge in August 2023. *Id.* ¶ 96. After the Complaint was filed in this Court on September 12, 2024, ECF 1, DFR referred the matter to the Office of Administrative Hearings on September 24, 2024. Declaration of Dorothy Bean, ECF 41 ¶ 10.

---

[2] This Opinion uses the term "partnership" in a colloquial sense. The agreement between LoanMart and CC Bank did not create a legal partnership. *See* Declaration of Dorothy Bean, ECF 41, Ex. C at 23 ¶ 15.

PAGE 3 – OPINION GRANTING MOTION TO DISMISS

# DISCUSSION

This Court begins by addressing Defendants' Motion to Dismiss, which challenges this Court's subject-matter jurisdiction and argues that *Younger* abstention applies. This Court first confirms that it has subject-matter jurisdiction over this case. *See Bean v. Matteucci*, 986 F.3d 1128, 1132 (9th Cir. 2021) (addressing subject-matter jurisdiction before addressing *Younger* abstention). This Court concludes it has subject-matter jurisdiction over Plaintiffs' claim because federal courts have equitable jurisdiction over suits that seek to enjoin state officials from violating the Constitution. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908).

*Younger*, however, requires abstention here. A quasi-criminal state civil enforcement proceeding was "ongoing" before any proceedings of substance occurred in this case. That proceeding implicates Oregon's important state interest in enforcing its consumer protection laws, and Plaintiffs would have an adequate opportunity to raise their constitutional challenge in those proceedings. The necessary elements for *Younger* abstention are met, and Plaintiffs do not demonstrate that extraordinary circumstances justify retaining jurisdiction. Plaintiffs' Complaint seeks to enjoin the state proceeding, so abstention requires dismissing the Complaint.

## A. Standard

A party may challenge the Court's subject-matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).[3] "A Rule 12(b)(1) jurisdictional attack

---

[3] Defendants assert both their challenge to subject-matter jurisdiction and their motion for *Younger* abstention under Rule 12(b)(1). The Ninth Circuit has stated that "*Younger* abstention is a jurisprudential rather than a jurisdictional question," *Kleenwell Biohazard Waste & Gen. Ecology Consulants, Inc. v. Nelson*, 48 F.3d 391, 394 n.3 (9th Cir. 1995), but has also described *Younger* as "essentially a jurisdictional doctrine," *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005), and has "not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1), both, or neither," *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779 n.2 (9th Cir. 2014). For purposes of this motion, this Court will assume that abstention is properly asserted under 12(b)(1).

may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint. *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

## B. Subject-Matter Jurisdiction

Defendants move to dismiss for lack of subject-matter jurisdiction. Defendants argue that Plaintiffs' Complaint, which alleges that the enforcement action is preempted by federal law, fails to establish federal-question jurisdiction under 28 U.S.C. § 1331. Motion to Dismiss ("Mot."), ECF 31 at 9. This Court disagrees.

Defendants' motion essentially argues that Plaintiffs cannot invoke this Court's jurisdiction because their preemption claim is not meritorious. *See id.* at 10–17. This line of argument inappropriately blurs the distinction between jurisdiction and the merits. Establishing subject-matter jurisdiction requires only that a federal question be "presented on the face of the plaintiff's properly pleaded complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), not that the federal claim be successful on the merits.[4] *See Ruhrgas AG v. Marathon Oil Co.*, 526

---

[4] As the authorities cited by Defendants explain, a preemption defense is insufficient to establish federal removal jurisdiction over a state law claim unless that area of state law has been completely preempted by federal statute. *See District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 143–44 (D.D.C. 2021); *Meade v. Avant of Colo., LLC*, 307 F. Supp. 3d 1134, 1140–41 (D. Colo. 2018). In those cases, the lack of complete preemption meant there was no basis for federal jurisdiction. In this case, by contrast, Plaintiffs seek to enjoin an alleged constitutional violation under *Ex parte Young*, which is an exercise of this Court's equitable jurisdiction. Defendants' cited authorities do not apply in this context.

In their Reply, Defendants also point to *Community State Bank v. Knox*, 523 F. App'x 925 (4th Cir. 2013). Reply in Support of Motion to Dismiss ("Reply"), ECF 46 at 5. But *Knox*, although a bit of a procedural tangle, ultimately resolves the same issue as *Elevate Credit* and *Meade*. First, in *Knox v. First Southern Cash Advance*, the district court rejected a complete preemption defense in a removal action and then, as in *Elevate Credit*, dismissed for lack of subject-matter jurisdiction. No. 05-CV-43, 2005 WL 8159567, at *2 (E.D.N.C. May 19, 2005). The same defendants then filed in a different district and attempted to drag the dispute back into

PAGE 5 – OPINION GRANTING MOTION TO DISMISS

U.S. 574, 577, 585 (1999) (explaining that subject-matter jurisdiction asks only whether the federal court has jurisdiction over the "category of claim in suit"). To the extent this Court's subject-matter jurisdiction is intertwined with the merits of Plaintiffs' action, "dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094–6 (9th Cir. 2008).

"It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1982) (citing *Ex parte Young*, 209 U.S. at 160–62); *see S. Pac. Transp. Co. v. Pub. Utils. Comm'n of Cal.*, 716 F.2d 1285, 1288 (9th Cir. 1983) ("[W]hen a plaintiff seeks to enjoin state action because federal law preempts it, jurisdiction is proper." (emphasis omitted)). Over the past forty years, both the Ninth Circuit and the U.S. Supreme Court have repeatedly reaffirmed that a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw*, 463 U.S. at 96 n.14; *see, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 641–42 (2002) ("We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit."); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320,

---

federal court by petitioning to compel arbitration, which the new district court and, ultimately, the Fourth Circuit both rejected because the FAA requires an "independent jurisdictional basis over the parties' dispute." *Knox*, 523 F. App'x at 928. The search for an independent jurisdictional basis looped back around to the Eastern District's original holding in *First Southern Cash Advance* that no complete preemption existed. *See id.* at 929. Here, by contrast, a complaint seeking injunctive relief under the Supremacy Clause has a cause of action sounding in equity. *See Ex parte Young*, 209 U.S. at 156; *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

PAGE 6 – OPINION GRANTING MOTION TO DISMISS

326 (2015) (describing this jurisdictional basis as "long recognized"); *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1055 (9th Cir. 2008). The federal court "may issue an injunction upon finding the state regulatory actions preempted." *Armstrong*, 575 U.S. at 326; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) (describing "the availability of prospective relief of the sort awarded in *Ex parte Young*" as giving "life to the Supremacy Clause").

Plaintiffs' Complaint seeks declaratory and injunctive relief based on federal preemption of the relevant state statute. *See* Compl., ECF 1 ¶¶ 100–13. Plaintiffs allege that they are imminently threatened by allegedly preempted state action. *Id.* ¶¶ 4, 113. Federal district courts have subject-matter jurisdiction over such claims because they arise under federal law.[5] Defendants' argument that preemption should not apply in this case goes to the merits, not this Court's jurisdiction. Accordingly, this Court has subject-matter jurisdiction over Plaintiffs' claim.

## C.  *Younger* Abstention

Defendants next argue that this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). This Court concludes that the requirements for *Younger* abstention are satisfied and will accordingly dismiss the Complaint.

*Younger* reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). The U.S. Supreme Court has "identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our

---

[5] Thoughtful questions have been raised about the extent to which this rule can be reconciled with the limits of Article III. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 496–502 (5th Cir. 2020) (Oldham, J., concurring). But the parties do not raise those issues here.

federal system." *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004). "*Younger* abstention permits federal courts to preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (internal quotation marks omitted).

### 1. *NOPSI* Categories

*Younger* abstention is limited to three categories of cases first identified in *New Orleans Public Service, Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350 (1989). One of the three *NOPSI* categories is "quasi-criminal" proceedings, or "state civil proceedings that are akin to criminal prosecutions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Ninth Circuit has not set out "criteria" to identify such proceedings but has "described the[ir] characteristics." *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 738 (9th Cir. 2020). Typically, quasi-criminal proceedings are state civil enforcement actions (1) "initiated to sanction the federal plaintiff . . . for some wrongful act," (2) a state actor "is routinely a party to the state proceeding and often initiates the action," and (3) investigations "are commonly involved." *Id.*

All typical features are present here. After investigation, DFR issued a cease-and-desist order stating that Plaintiffs were violating various provisions of the Oregon Consumer Finance Act, and sought to impose a substantial monetary penalty. *See* Notice Order, ECF 6-1, Ex. A ¶¶ 41–45. DFR also referred this matter to a hearing before a state hearing officer, in which the parties may formally present evidence and argument. *See* O.R.S. 183.417. This Court finds that these proceedings constitute a "quasi-criminal" enforcement proceeding.

## 2. *Middlesex* Factors

If a state action falls into one of the *NOPSI* categories, it must then satisfy three factors to justify *Younger* abstention. The state proceeding "must be (1) 'ongoing,' (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise constitutional challenges.'" *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, (1982)). The Ninth Circuit explicitly imposes an additional requirement implicit in *Middlesex*: Even if all requirements are met, a district court may only abstain under *Younger* if adjudication of "the federal action would have the practical effect of enjoining the state proceedings." *Id.*

### a. Ongoing state proceeding

The state civil proceeding in this case is ongoing. Although the *Younger* analysis must be conducted "in light of the facts and circumstances existing at the time the federal action was filed," *Duke v. Gastelo*, 64 F.4th 1088, 1093 (9th Cir. 2023) (quoting *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018)), this does not obligate the court to ignore subsequent developments, *see Middlesex*, 457 U.S. at 436–37. The "ongoing" requirement does not look mechanically at whether the state proceeding was in progress on the date the federal complaint was filed. Instead, state proceedings are deemed "ongoing for the purposes of *Younger* abstention if they are initiated before any proceedings of substance on the merits have taken place in the federal court." *Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1225 (9th Cir. 2023) (internal quotation marks and citations omitted). Stated differently, "the commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an embryonic stage." *Id.* (citations omitted).

Analyzing this factor requires this Court to examine the proceedings that had occurred in the federal case by the time the state case commenced. *See, e.g.*, *Hoye v. City of Oakland*, 653

PAGE 9 – OPINION GRANTING MOTION TO DISMISS

F.3d 835, 844 (9th Cir. 2011) (analyzing status of federal proceedings on the date the state proceeding was initiated); *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 730 (9th Cir. 2017) (same). "Relevant factors include the number of conferences held, if discovery was undertaken, any motions ruled on, and the overall amount of time that the district court spent on the case." *Credit One Bank*, 60 F.4th at 1226.

Here, the parties dispute whether a state civil proceeding was initiated in July 2023, when DFR sent a cease-and-desist order to Plaintiffs, or September 2024, when DFR actually referred the matter for an administrative hearing. *See* Mot., ECF 31 at 18; Response to Motion to Dismiss, ECF 44 at 11. But this framing misses the mark. Even Plaintiffs acknowledge that a state proceeding began no later than September 24, 2024, when DFR referred this matter to the Office of Administrative Hearings. *See* Response to Motion to Dismiss, ECF 44 at 11; Office of Administrative Hearings Referral Form, ECF 43-1, Ex. 1 at 3.

On September 24, 2024, no proceedings of substance on the merits had occurred in this case. This case had been pending for less than two weeks. No hearings or conferences had been held, Defendants had not responded to Plaintiffs' preliminary injunction motion, and no substantive orders had been issued. Only twenty-three ECF entries appeared on the docket; ten were related to *pro hac vice* admissions, and most of the others were routine administrative entries. This case had not even been assigned to this Court. *See* ECF 30. Even accepting Plaintiffs' argument that the state proceeding did not begin until September 24, 2024, this factor is satisfied because "the state action was 'ongoing' before the federal action proceeded beyond the embryonic stage." *Credit One Bank*, 60 F.4th at 1225.

    b. **Important state interests**

The second *Middlesex* factor requires that the state proceedings implicate important state interests. *Herrera*, 918 F.3d at 1044. *Younger* recognized that a state has a strong interest in

PAGE 10 – OPINION GRANTING MOTION TO DISMISS

enforcing its laws "against socially harmful conduct that the State believes in good faith to be punishable under its laws and Constitution." *Miofsky v. Superior Court*, 703 F.2d 332, 336 (9th Cir. 1983) (quoting *Younger*, 401 U.S. at 51–52). "Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011) (citing *Fresh Int'l Corp. v. Agric. Labor Rels. Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986)); *see Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617–18 (9th Cir. 2003) (holding that, in quasi-criminal cases, the nature of the proceedings supports a finding that the proceeding implicates important state interests).

Here, the state is in an "enforcement posture." DFR seeks to enforce Oregon's consumer finance laws, which unquestionably implicates important state interests. *See Credit One Bank*, 60 F.4th at 1227 (holding that "an important state interest was present" where the state "sought to enforce state laws that protect consumers from predatory business practices"). This factor is therefore satisfied.

Plaintiffs argue that Oregon cannot have a valid interest in enforcing a state law that violates federal law. Resp., ECF 44 at 11–12. *Younger* abstention is not required when a "state tribunal is acting beyond its authority," *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991), such as when federal preemption of state law is "readily apparent," *Woodfeathers, Inc. v. Washington Cnty.*, 180 F.3d 1017, 1021 (9th Cir. 1999). But this is a demanding standard. The Ninth Circuit has found preemption to be "readily apparent" in only a small handful of cases: "where the Supreme Court had previously decided the issue," "where the state law fell under the express preemption clause of the Employment Retirement Income Security Act of

PAGE 11 – OPINION GRANTING MOTION TO DISMISS

1974," or "where the federal regulatory jurisdiction of the employees in a bargaining unit had previously been determined." *Id.* at 1021–22; *see also NOPSI*, 491 U.S. at 366 (holding that only where the statute is "flagrantly and patently violative of express constitutional prohibitions" such that it is facially "plainly invalid" should a court decline to abstain). To make abstention hinge on whether a state law is preempted on the merits would "render *Younger* a nullity." *Id.* at 1021.

Here, preemption is not readily apparent, nor is the state law flagrantly and patently unconstitutional. Although this Court is not ruling on the merits of Plaintiffs' Complaint, as this Court noted on the record at the hearing, Plaintiffs' likelihood of establishing that they are entitled to the preemption afforded state-chartered banks under federal law appears slim at best. The true lender doctrine, which is based on a long-standing anti-evasion principle in usury law, *see Fidelity Sec. Corp. v. Brugman*, 137 Or. 38, 50–51 (1931); *Hazen v. Cook*, 55 Or. App. 66, 70 (1981), allows a court to disregard the form of a transaction and instead consider the totality of the circumstances to identify the "true lender" by determining which party has the predominant economic interest in a loan. *See, e.g.*, *CFPB v. CashCall, Inc.*, No. CV 15-7522, 2016 WL 4820635, at *5–6 (C.D. Cal. Aug. 31, 2016); *Sanh v. RISE Credit Serv. of Tex., LLC*, No. C20-0310, 2022 WL 16854329, at *3 (W.D. Wash. Nov. 10, 2022); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190, 1202–03 (N.D. Cal. 2012); *see also Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004) (noting that the "touchstone for decision" is which party placed its money at risk).

That doctrine would appear to apply here, which would likely foreclose Plaintiffs' preemption argument. Plaintiffs appear to be the true lender behind the loans made through their partnership with CC Bank. As non-banks, Plaintiffs therefore would not be entitled to take advantage of the preemption afforded state-chartered banks under federal law.

The terms of their partnership suggest Plaintiffs possess the primary economic interest in the loans. The agreement provides that CC Bank may sell to Plaintiffs a participation interest in each loan, which Plaintiff WFG Purchaser, LLC, is obligated to purchase. The percentage of Plaintiffs' interest is set at 95% for an ordinary loan and 100% for a charged-off loan. Declaration of Dorothy Bean ("Bean Decl."), ECF 41, Ex. B. at 6. This agreement, in simpler terms, gives Plaintiffs an overwhelming interest in the receivables from the loan in exchange for shouldering virtually all of the risk.

Plaintiffs also designed the lending program at issue and ran its day-to-day operations, further suggesting they, and not CC Bank, should be considered the true lender of the resulting loans. Plaintiffs indemnified the bank from and against any liability and served as the nerve center of the lending process: they marketed the loans, developed the application form and loan agreement, processed and reviewed applications, provided a list of recommended applicants to the bank, fielded customer service issues, processed payments, and engaged in collections. *Id.*, Ex. C at 4–7, 14. The interest rates charged on the loans at issue—every one of which exceeded Oregon's legal limit—further suggests the primary purpose of this unusual arrangement was to evade Oregon usury law. *See* Declaration of Rainer Walk, ECF 6, Ex. F at 40 (noting loan APRs ranged from 61.95% to 202.86%).

As presented in the Complaint and in the declarations submitted by the parties, Plaintiffs and CC Bank appear to have designed an arrangement to enable Plaintiffs to make loans that otherwise would be plainly illegal under Oregon law. Oregon has an important interest in enforcing its consumer protection laws to thwart such arrangements. Plaintiffs have not shown they are likely to succeed on the merits of their preemption claim, much less demonstrated that it is "readily apparent" that Defendants' enforcement action is preempted by federal law. Most

PAGE 13 – OPINION GRANTING MOTION TO DISMISS

courts to rule on this issue have concluded otherwise.[6] This Court therefore concludes that the second *Middlesex* factor is established.

### c. Adequate opportunity to raise constitutional challenges

The third *Middlesex* factor is met because the state proceedings provide a sufficient forum for Plaintiffs' constitutional challenge. *Younger* abstention includes a presumption "that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Accordingly, "[w]here vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Lebbos v. Judges of Superior Ct., Santa Clara Cnty.*, 883 F.2d 810, 815 (9th Cir. 1989) (quoting *Middlesex*, 457 U.S. at 432).

---

[6] Plaintiffs argue that federal courts apply the true lender doctrine "only if the bank both transfers title in the loan and plays no role in making the loan." Reply, ECF 42 at 6 (citing *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1369–70 (D. Utah 2014); and *Hudson v. Ace Cash Express, Inc.*, No. IP 01-1336-C, 2002 WL 1205060, at *5–6 (S.D. Ind. May 30, 2002)). This Court's review of the law suggests *Sawyer* and *Hudson* are outliers. Most courts have applied the true lender doctrine even when the bank plays some role in making the loan, relying on a fact-specific, totality-of-the-circumstances standard to determine whether the bank's involvement is outweighed by other factors that suggest the non-bank is the true lender. *See CashCall*, 2016 WL 4820635, at *5–6 (collecting cases); *District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 138–40 (D.D.C. 2021) (applying "true lender" doctrine where complaint alleged non-bank affiliate purchased a 90% or 96% interest in loan receivables).

Plaintiffs also cite the FDIC's valid-when-made (or "*Madden*-fix") rule, which governs the permissible interest on loans that were sold or assigned. *See* Resp., ECF 44 at 12 (citing 12 C.F.R. § 331.4(e)). But the FDIC rule did not displace the true lender doctrine. *See* Federal Interest Rate Authority, 85 Fed. Reg. 44,146, 44,151–53 (July 22, 2020) (explaining the FDIC's view that the rule "cannot be reasonably interpreted to foreclose true lender claims" because the rule is "premised upon a State bank having made the loan"). The Office of the Comptroller of the Currency did make a specific true lender rule for national banks, which adopted a test similar to the one that Plaintiffs set forth as the *Sawyer–Hudson* standard. National Banks and Federal Savings Associations as Lenders, 85 Fed. Reg. 68,742 (Oct. 30, 2020). But the OCC rule was subsequently rescinded by congressional resolution, *see* Pub. L. No. 117-24, 135 Stat. 296 (2021), and the FDIC never adopted a parallel rule applicable to state-chartered banks.

PAGE 14 – OPINION GRANTING MOTION TO DISMISS

The state proceedings offer Plaintiffs an adequate opportunity to raise the preemption argument that they raise in this Complaint. In the event of an adverse decision before the state administrative law judge, Plaintiffs may raise their arguments by filing a petition for review in the Oregon Court of Appeals. O.R.S. 183.482; *see Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (finding an opportunity to raise claims sufficient where "constitutional claims may be raised in state-court judicial review of the administrative proceeding"); *Hirsh v. Justices of Supreme Ct. of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995) (holding that the opportunity to raise federal claims in a petition for judicial review satisfies the requirements of *Younger*). The third *Middlesex* factor is therefore satisfied.

### d. Effect of relief on ongoing state action

If all three *Middlesex* factors are satisfied, this Court will abstain under *Younger* "so long as 'the federal action would have the practical effect of enjoining the state proceedings.'" *Herrera*, 918 F.3d at 1044 (quoting *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)). Here, Plaintiffs' Complaint asks that this Court enjoin the ongoing enforcement proceeding and issue declaratory relief that the enforcement proceeding is illegal. ECF 1 at 24. This would substantially interfere with the state proceeding.

### 3. *Younger* Exception for Irreparable Injury

Once all of the *Middlesex* factors are established, abstention under *Younger* is typically mandatory unless this Court "finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *see, e.g.*, *Krahm v. Graham*, 461 F.2d 703, 707 (9th Cir. 1972). Plaintiffs do not allege or argue that the state administrative proceeding in this case was initiated in bad faith.

Absent a finding of bad faith or harassment, this Court may exercise jurisdiction only in "extraordinary circumstances where the danger of irreparable loss is both great and immediate."

PAGE 15 – OPINION GRANTING MOTION TO DISMISS

*World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987); *see Baffert*, 332 F.3d at 621. This is a demanding standard, requiring "an extraordinarily pressing need for immediate federal equitable relief" to prevent "great, immediate, and irreparable harm." *Moore v. Sims*, 442 U.S. 415, 433 (1979); *see Younger*, 401 U.S. at 53–54 (suggesting extraordinary circumstances exist when a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph"); *Betschart v. Oregon*, 103 F.4th 607, 639 (9th Cir. 2024) (Bumatay, J., dissenting) (describing this exception as requiring circumstances "so extreme as to justify displacement of our foundational principles of federalism"). "A plaintiff who seeks to head off *Younger* abstention bears the burden of establishing" that such circumstances exist. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Plaintiffs have not made that showing here.

      The Ninth Circuit has historically applied this exception when a state prosecution may violate the Double Jeopardy Clause. *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992). Over the last several years, the Ninth Circuit has significantly broadened its scope, recognizing extraordinary circumstances justifying the exercise of federal jurisdiction in cases where defendants were incarcerated "without a constitutionally adequate bail hearing," *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018), where defendants were incarcerated pending trial "without counsel in direct violation of *Gideon*'s watershed command," *Betschart*, 103 F.4th at 617, where a detainee was wrongfully detained based on an unconstitutional probable cause determination, *Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019), and where an individual's "due process right to avoid forcible administration of antipsychotic medicine" could not be vindicated without federal judicial intervention, *Bean v. Matteucci*, 986 F.3d 1128, 1134 (9th Cir. 2021).

PAGE 16 – OPINION GRANTING MOTION TO DISMISS

Plaintiffs first argue that the enforcement of Oregon consumer finance law against them would violate the Supremacy Clause, which they contend is "independent grounds to decline abstention." Resp., ECF 44 at 14. As outlined above, this Court is skeptical that any constitutional violation exists. But even if Plaintiffs are correct, an alleged constitutional violation "does not, by itself, constitute an exception to the application of *Younger* abstention." *Baffert*, 332 F.3d at 621; *see NOPSI*, 491 U.S. at 365 (holding that the "mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction"). Absent an alleged constitutional violation, after all, "there would be no basis for federal jurisdiction in the first place, and thus nothing from which to abstain." *Bristol-Myers Squibb*, 979 F.3d at 738.

Next, Plaintiffs argue that they will suffer irreparable financial injury if DFR is permitted to enforce a law that a court later determines is unconstitutional because the Eleventh Amendment would bar the recovery of damages. Resp., ECF 44 at 14–15. Plaintiffs are correct that, in the preliminary injunction context, courts have recognized that monetary injury is irreparable when sovereign immunity would bar a plaintiff from recovering money damages from a defendant. *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). But most of the cases Plaintiffs cite do not address abstention, where the exception requires "extraordinary circumstances." *See Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 939 (E.D. Cal. 2021) (holding that this exception demands more than the preliminary injunction standard). The one case Plaintiffs cite that does discuss *Younger*, *Applied Underwriters, Inc. v. Lara*, stated that lost profits may be an irreparable injury given an "uncertain ability to recover damages from the state," but concluded that the appellants in that case failed to allege "any true 'irreparable injury' arising from 'extraordinary circumstances.'" 37 F.4th 579, 599 (9th Cir. 2022).

PAGE 17 – OPINION GRANTING MOTION TO DISMISS

While recent Ninth Circuit cases have demonstrated a greater willingness to apply the "extraordinary circumstances" exception, all of those cases involved an irreparable "threat to the plaintiff's federally protected rights," *Younger*, 401 U.S. at 46, in the form of "a deprivation of physical liberty," *Bean*, 986 F.3d at 1134. Recognizing Plaintiffs' injury in this case as satisfying the extraordinary circumstances standard would represent a novel expansion of this exception on two dimensions. First, each of the Ninth Circuit cases involved a constitutional right. *See Betschart*, 103 F.4th at 621 (Sixth Amendment right to counsel); *Bean*, 986 F.3d at 1134 (due process right to avoid involuntary medication); *Page*, 932 F.3d at 904 (due process right to not be detained based on invalid probable cause determination); *Arevalo*, 882 F.3d at 766 (Eighth Amendment right to reasonable bail). By contrast, Plaintiffs' cause of action is based on the Supremacy Clause, which "is not the source of any federal rights." *Armstrong*, 575 U.S. at 324,

Second, each of those cases involved the unique threat to liberty posed by unconstitutional physical detention or restraint. *See Betschart*, 103 F.4th at 617 (holding that the petitioners "suffer irreparable injury for the duration of their unlawful pretrial detention"); *Bean*, 986 F.3d at 1134 (describing the litigant as being "subject to a physically coercive response"); *Page*, 932 F.3d at 904 (describing the irreparable harm as the "complete loss of liberty"); *Arevalo*, 882 F.3d at 767 (holding that an "irreparable harm" was caused by the "[d]eprivation of physical liberty by detention"). Plaintiffs, by contrast, allege only financial harm. While Plaintiffs argue that they have suffered significant and potentially irreparable financial losses, they do not carry their burden to demonstrate "an extraordinarily pressing need for immediate federal equitable relief" analogous to the circumstances in which the Ninth Circuit has recognized this exception may apply. *Moore*, 442 U.S. at 433.

* * *

PAGE 18 – OPINION GRANTING MOTION TO DISMISS

When a court abstains under *Younger*, "claims for injunctive and declaratory relief are typically dismissed." *Herrera*, 918 F.3d at 1042. Here, Plaintiffs' Complaint seeks only injunctive and declaratory relief. Accordingly, *Younger* abstention requires dismissal of the federal action. This dismissal is without prejudice to refile after the state administrative proceedings have concluded.

## CONCLUSION

Defendants' Motion to Dismiss, ECF 31, is GRANTED. Plaintiffs' Motion for Preliminary Injunction, ECF 4, is DENIED, and Plaintiffs' Complaint, ECF 1, is DISMISSED without prejudice.

**IT IS SO ORDERED.**

DATED this 7th day of January, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge